## HARWELL v. MORRIS.

### No. 5303.

Court of Civil Appeals of Texas. Amarillo.
Sept. 30, 1940.

Rehearing Denied Oct. 4, 1940

A. A. Lumpkin, of Amarillo, for appellant.

Gibson & Sutton, of Amarillo, for appellee.

STOKES, Justice.

This is an election contest instituted in the trial court by appellee, C. L. Morris, against appellant, who was declared by the Executive Committee of Oldham County to have been nominated as the Democratic candidate for County Commissioner of Precinct No. 3 of that county. The primary election was held on July 27, 1940, and appellant and appellee were rival candidates for the nomination. The talley sheets returned by the officials of the election revealed that appellee had received 180 votes and appellant 182 votes in the election, which returns were verified by the Democratic Executive Committee of that county on August 3, 1940. The list of nominees was duly published by the county clerk and on August 12th appellee filed his notice and petition of contest, which was set for a hearing September 3, 1940, at which time appellant filed his answer and the case proceeded to trial on that day in the district court. The case was submitted to the court without the intervention of a jury and at the conclusion of the hearing the trial court concluded that appellant had received only 173 legal votes and that appellee, who was the contestant, received 174 legal votes, and judgment was rendered accordingly from which appellant has prosecuted an appeal.

We are met at the outset by a motion to dismiss the appeal upon the ground that the trial judge was disqualified to try the case. Attached to the motion are affidavits which reveal that the wife of appellee, Morris, the contestant, is a sister of the wife of an uncle of the trial judge's wife. By following a process of mental gyration, it will be seen that Mrs. Morris was in no sense a blood relative of Mrs. Witherspoon, the wife of the trial judge. It is held by the courts that affinity is the relationship which arises by reason of marriage between one of the married pair and the blood relations of the other, and under the rules of law that are well established by the decisions of our courts the contention of appellant here presented is not well taken. The motion will be overruled. Seabrook v. First Nat. Bank, Tex. Civ.App., 171 S.W. 247; Williams v. Foster, Tex.Civ.App., 233 S.W. 120.

Appellee has filed a number of cross-assignments of error in which he contends that certain votes cast in favor of appellant and accepted and counted in appellant's favor by the court were illegal, and that other votes cast for appellee and rejected by the court were legal votes and should have been counted in his favor. Appellant objects to our consideration of these cross-assignments of error upon the ground that appellee did not perfect an appeal from the judgment. The cross-assignments all bear upon matters presented in the appeal by the appellant and affect his interest in the case. Appellee is, therefore, entitled to have them considered by us and the objection of appellant to their consideration will be overruled. Booth v. Uvalde Rock Asphalt Co., Tex. Civ.App., 296 S.W. 345; Hunt v. Garrett, Tex.Civ.App., 275 S.W. 96; Gilmer's Estate v. Veatch, 102 Tex. 384, 117 S.W. 430; Limpia Royalties v. Cowden, Tex.Civ.App., 94 S.W.2d 481.

Dr. Clark voted for appellant in the election and the trial court held he was not qualified to vote. The record shows that in June, 1940, Dr. Clark was convicted in the Federal Court in a criminal case in which he was charged with violation of the Harrison Narcotic Act, 26 U.S.C.A. Int. Rev.Code §§ 2550–2557. He entered a plea of guilty and his punishment was assessed at six months in jail, which was suspended for two years. The Federal Statute, 18 U.

S.C.A. § 541, provides that an offense, the penalty for which does not exceed six months in jail or a fine of $500, or both, shall be considered a petty offense and may be prosecuted upon information and complaint. The trial court held that Dr. Clark was not entitled to vote in the election because, under, 26 U.S.C.A. § 1047, of the Federal Statute, he could have been confined in the penitentiary by the Federal Court. Appellant contends this was error because the punishment actually assessed against Dr. Clark was only six months in jail. We do not construe 18 U.S.C.A. § 541 to mean that the punishment actually assessed by the court upon a trial shall control the class of the offense. It provides that all offenses, the penalty for which does not exceed confinement for six months, may be prosecuted under complaint and information. If appellant's interpretation were correct, then it would be impossible for the grand jury to know, when they were considering the question of whether an indictment should be returned, whether it was necessary to return an indictment or not. We think the law makers, therefore, must have had reference to the potential penalties under the law and not the actual punishment that might be assessed by the court upon a trial. This assignment of error will be overruled.

■ The record shows that M. L. Carter voted for appellant upon an exemption certificate, duly issued to him, under which he was excused from paying a poll tax on account of being permanently disabled. The court held that, under the facts, Carter was not disabled and was, therefore, liable to the payment of a poll tax under the law. His vote was, therefore, rejected by the court and appellant contends this was error. The evidence is conflicting upon the question of Carter's disability. It was shown that only a short time prior to the election he had operated a tractor, although under some difficulty, and that he was accustomed to riding a bicycle, although, after doing so, he would suffer pain. It was shown, also, that he was confined to his home and bed most of the time and that his health was far from being robust. The trial court found he was not disabled in the manner contemplated by the law. The office and purpose of the exemption certificate were to relieve the voter from the necessity of paying a poll tax. While the evidence does not show that Carter failed to pay his poll tax, it is shown that he voted upon his exemption certificate. Under the state of the evidence, the trial court would have been authorized to find either way upon the question of Carter's disability, and there being evidence to support his conclusion and judgment that Carter was not, as a matter of fact, disabled in the manner contemplated by law, and, therefore, his vote should not be counted, will not be disturbed.

■ ■ The next contention made by appellant pertains to the vote of Mary Bell Godwin, the wife of Raymond Godwin. She cast ballot No. 161 in favor of the appellee, and the trial court held she was a legally qualified voter in Oldham County. This holding is challenged by appellant and we think the court erred in refusing to sustain the challenge. The testimony shows that Mrs. Godwin and her husband were married in Oldham County and lived there until June, 1938, when they removed to Castro County where the husband had procured employment. They moved most of their household furniture to Castro County and resided there for about a year. About the 1st of June, 1939, the employment came to an end and Godwin and his wife returned to Oldham County and lived there with the wife's father until July, 1939, when the husband obtained employment at Fritch, in Hutchinson County, where they have since resided. Their household furniture was left in storage at Vega, in Oldham County. It is undisputed that Mrs. Godwin, at the time of the election, resided at Fritch with her husband, and there is nothing in the testimony which indicates they did not intend to remain there indefinitely. Art. 2958, R.C.S., provides that the residence of a married man is where his wife resides. The husband has the legal right, however, to establish the residence of the family and, under the circumstances disclosed by the evidence, Mrs. Godwin lost her right to vote in Oldham County when her husband established their residence in Hutchinson County. In our opinion, the court erred in holding otherwise and this assignment of error will be sustained. Stratton v. Hall, Tex. Civ.App., 90 S.W.2d 865.

■ The next contention presented by appellant pertains to the vote of Fant Hitson who cast ballot No. 82 for the appellee. His right to vote was challenged by appellant and the challenge being overruled by the court, he assigns such action as error. Hitson testified that he had been convicted in the State of New Mexico of

the offense of cattle theft, served a portion of an assessed term in the New Mexico penitentiary and was paroled. He testified that he employed a lawyer in New Mexico to obtain a pardon for him and that he paid the lawyer a fee for his services, but that he had never seen the lawyer since, had not received any pardon or document evidencing the issuance of one, and did not know whether he had been pardoned or not. Appellant, Roddy Harwell, testified that he went to Santa Fe, New Mexico, and, assisted by the Secretary of State and a clerk in his office, he examined the pardon records in the office of the Secretary of State and that such records did not reveal a pardon granted to Hitson. Some question is raised as to the admissibility of this testimony, but we think it was admissible and should have been considered by the court. In connection with the testimony of Hitson to the effect that he had never received any evidence of a pardon having been granted to him, it was sufficient to overcome the presumption of his qualification to vote that was created by the action of the election judges in permitting him to do so. Sanders v. St. Louis & S. W. Ry. Co., Tex.Civ.App., 135 S.W. 718; Johnson v. Skipworth, 59 Tex. 473; Stamper v. Commonwealth, 100 S.W. 286, 30 Ky.Law Rep. 992. The evidence we have detailed was the only evidence before the court concerning Hitson's qualifications. His testimony to the effect that he had employed a lawyer to procure a pardon for him and had paid the lawyer a fee for his services in doing so was no evidence that a pardon had been granted and there was, therefore, no evidence to support the holding of the court that Hitson was a qualified voter. This assignment of error will be sustained.

■ The next contention of appellant is presented under his sixth and seventh assignments of error and have reference to the qualifications as voters in Oldham County of Paul Long and his wife who voted for appellant. The trial court held that Long and his wife were not qualified to vote and deducted their votes from the total vote received by appellant. The testimony shows that Paul Long lived at Vega, in Oldham County, for some fifteen years, and married there. He was employed at a filling station at Vega until September 7, 1939, when he, with his family, moved to Amarillo, in Potter County, where he obtained employment and entered

a night business school. He was employed at Amarillo and attending school there three nights each week at the time of the election. He and his wife went from Amarillo to Vega on the day of the election and voted for appellant. Long testified that it was his intention to return to Oldham County after finishing school and probably go in business for himself. He also testified that if he returned, he would live with his people in Oldham County in another precinct. Without detailing the testimony, the record reveals evidence upon which the trial court would have been warranted in holding that the Longs were qualified voters in Oldham County or that they were not. We think the preponderance of the evidence was in favor of the court's judgment to the effect that they were not residents of the county and, therefore, their votes in the election should be rejected. At least the record reveals testimony which supports the judgment and we are not authorized to disturb it. These assignments will, therefore, be overruled. Hogg v. Waddell, Tex.Civ.App., 42 S.W.2d 488; Clark v. Stubbs, Tex.Civ.App., 131 S.W.2d 663.

■ The next contention presented by appellant pertains to Mrs. Gene Halliburton. She cast her vote for appellant and the same being challenged by appellee, the trial court sustained the challenge and deducted her vote from the total vote received by appellant. In 1938, before her marriage, Mrs. Halliburton taught school at Vega, in Oldham County. At that time she was a resident of Randall County. Gene Halliburton, who was afterwards her husband, resided in Oldham County in 1938 and was employed by the Soil Conservation Service of the United States Government at Amarillo, in Potter County. He traveled back and forth from his home to Amarillo in going to and returning from his work until April, 1939, when he established living quarters at Amarillo. On August 3, 1939, he and Mrs. Halliburton were married, she still being a resident of Randall County. After their marriage Halliburton and his wife established living quarters at Amarillo and had continuously resided there until the day of the trial. Gene Halliburton testified that he had no fixed intention to return to Oldham County. Art. 2958, R.C.S., provides that the residence of a married man is where his wife resides. By no stretch of the imagination could it be said that Mrs. Halliburton re-

sided in Oldham County July 27, 1940, the date upon which the election was held. She had never been a resident of that county, but had resided at Canyon, in Randall County, before her marriage, and with her husband at Amarillo, in Potter County, afterwards. Her residence was, therefore, in Potter County at the time she voted and the trial court correctly held that her vote was illegal and should not be counted.

The next contention presented by appellant pertains to the vote of Joe Harris who voted for appellee. This voter was shown to be a single man and was formerly a resident of Comanche County where his parents resided. He obtained employment in Eastland County and testified that he lived in that county for some six months before January 20, 1940, when he procured employment with the United States Soil Conservation Service at Vega and removed to Oldham County. He testified that he claimed Vega as his place of residence and had no intention to return to Comanche County or to Eastland County. Sec. 9 of Art. 16 of our Constitution, Vernon's Ann.St. provides that absence on business of the United States shall not forfeit a residence once obtained. It does not provide, however, that a voter or citizen of the State, although a single man, cannot change his place of residence. Harris cast his vote for the appellee and the trial court held it to be a legal vote. There is ample testimony in the record to support the finding and under these circumstances we are not authorized to disturb it. This assignment of error will be overruled.

Under the tenth assignment of error appellant contends the court erred in holding to be legal the vote of H. L. Looney, which was cast for appellee. The record shows Looney was a single man and that he had paid his poll tax in Oldham County where he had resided for a number of years. In 1936 he obtained employment in the service of the United States and had worked for the Government most, if not all, of the time since 1936. He was working for the Government at the helium plant near Amarillo, in Potter County, at the time the election was held, and maintained his living quarters in a hotel room at Amarillo. He had been employed at the helium plant for some two months before the election. The trial court held his vote legal and the holding is challenged under this assignment of error. It was not shown that Looney had abandoned his residence

in Oldham County and Sec. 9 of Art. 16 of the State Constitution provides that absence on business of the United States shall not forfeit a residence once obtained. We think the testimony amply supported the court's judgment to the effect that Looney was a resident of Oldham County and legally qualified to vote in the election. In our opinion this assignment is without merit and it will be overruled.

Under the eleventh and twelfth assignments of error the ruling of the court upon the legality of the vote of Frank Donegan and his wife is brought into question. The ballots were cast in favor of appellant and upon the trial they were rejected by the court upon the ground that Donegan and his wife were not legal residents of Oldham County when the election was held. The testimony was to the effect that before his marriage in 1939 Frank Donegan resided at the headquarters of the Landergin ranch in Oldham County. In 1937 the portion of the ranch where the headquarters were located was sold and the headquarters of the remaining portion were moved to another location on the ranch known as Ontario, in Oldham County. Donegan was manager of the ranch and there was not sufficient room at the latter headquarters for him to establish a place of residence. After his marriage in 1939 he and his wife lived a portion of the time at Amarillo, in Potter County, and a portion at Higgins, in Lipscomb County, where Mrs. Donegan resided before the marriage. Donegan testified that he had never spent but one night in Oldham County since his marriage and that was because of a break-down of his automobile. There is not only no evidence that he resided in Oldham County at any time after his marriage, but the judgment of the court to the effect that he was not a resident of the county at the time of the election is amply supported by the testimony. We find no error in this ruling of the court and these assignments of error will be overruled.

Under proper cross-assignments of error appellee assails the action of the court in sustaining certain challenges of votes presented by appellant and in overruling others presented by appellee. Under his first and second cross-assignments of error, however, appellee challenges the right of appellant to contest votes cast for appellee by presenting them for the first time in his answer which was filed more than ten days after the election. Without

entering into an extended discussion of the contention, it is our opinion that appellant had the right thus to contest the votes cast for appellee. If contestees, such as appellant in this case, are governed by the statute which requires a contestant of an election to file his contest within ten days after the returns have been made, they would in many cases be denied the right to present legitimate defenses in cases of this nature. When the returns have been canvassed and a candidate declared to have been nominated, it would be fatuous indeed to require of him that he file a contest within the same length of time that his opponent is allowed to do so. Having been elected he usually is satisfied and has no disposition to contest the election. Under such circumstances his opponent could wait until the tenth day to contest the election and thus deprive the successful candidate of the right to present to the court legitimate bases for upholding the return made by the election officials. There is in our opinion no merit in this contention of appellee and it will be overruled.

■ Under the sixth cross-assignment of error appellee complains of the ruling of the court upon his challenge of the vote of Gene Halliburton. This voter cast his ballot in favor of appellant and it was challenged by appellee upon the ground that Halliburton was not a resident of Oldham County at the time the election was held. The court overruled the challenge and counted the vote for appellant. The principal facts concerning the status of Gene Halliburton are detailed above in our discussion of the challenge of the vote of Mrs. Gene Halliburton. The Halliburtons were married August 3, 1939, and immediately established living quarters at Amarillo in the nature of a furnished apartment where they lived at all times thereafter and where they were living on the date of the election. Gene Halliburton had lived at home with his parents in Oldham County until April, 1939, when he moved to Amarillo, in Potter County. He was then, and for some time had been, employed by the Soil Conservation Service of the United States Government and was still so employed when the election was held in Oldham County. Halliburton testified that on the date of the election he had no intention of returning to Oldham County although he had paid his poll tax there for the year 1939. Unless it must be held other-

wise because of the provisions of Sec. 9 of Art. 16 of the State Constitution, Halliburton and his wife had unquestionably established their residence at Amarillo and we cannot subscribe to the contention that under that article their place of residence must be said to be in Oldham County. The constitutional provision is merely to the effect that absence on business of the State or the United States shall not forfeit a residence once obtained. If it had been shown that Gene Halliburton still claimed Oldham County as his residence or that it was his intention to return there after his employment with the Soil Conservation Service had ceased, then neither his absence on the business of the United States nor the establishment by him and his wife of a residence at Amarillo in the manner in which they did would have forfeited their residence in Oldham County. They still would have had the right to maintain their residence there if they desired to do so. Not only was it not shown that Halliburton desired or intended to maintain his residence in Oldham County, but he testified that he had no intention of returning there. The evidence in reference to these voters is not contradicted and we think the court erred in overruling the contest of appellee in reference to Gene Halliburton's vote. This cross-assignment of error will, therefore, be sustained.

■ Under the seventh cross-assignment of error appellee contends the court erred in overruling his challenge of the vote of Mrs. Robert Orton, who cast her ballot in favor of the appellant. The record shows that Mrs. Orton's maiden name was Roberta Turner. She had lived for many years with her mother in Oldham County. Following her graduation from the high school at Vega she entered West Texas State Teachers College at Canyon, in Randall County, and graduated there in the spring of 1939. In the fall of that year she was employed as a teacher in the school at Groom, in Carson County. In May, 1940, she married Robert Orton who was, and for many years had been, a resident of Randall County and was employed as an assistant in the postoffice at Canyon. The testimony shows that Mrs. Orton had been reemployed in the school at Groom for the 1940-41 term and that she will probably spend most of her week-ends there, but some of them will be spent with her mother in Oldham County and others with her hus-

band at Canyon, in Randall County. When they were married the husband was possessed of a lot at Canyon, and since their marriage they have begun the erection of a dwelling upon the lot but it had not been completed when the election was held nor indeed at the date of the trial. Mrs. Orton testified that when she returns to her husband on week-ends they stay at his father's home at Canyon and it is their intention to occupy the dwelling on her husband's lot at Canyon when it is completed. There is no question that Mrs. Orton's legal residence before her marriage was at Vega, in Oldham County. From this it will be seen that she was a married woman at the time she voted in the election and that her husband resided at Canyon, in Randall County. It has been the law of this State since an early day that the place of residence of a married woman is where her husband resides. Lacey v. Clements, 36 Tex. 661; Henderson v. Ford, 46 Tex. 627; Haymond v. Haymond, 74 Tex. 414, 12 S.W. 90; Russell's Heirs v. Randolph, 11 Tex. 460.

It has never been the law in Texas that the residence of the husband is drawn to that of the wife where they happen, for a time, to be at different places. Republic of Texas v. Skidmore, 2 Tex. 261; Flowers v. State, 109 Tex.Cr.R. 241, 3 S.W.2d 1111; Richmond v. Sangster, Tex.Civ.App., 217 S.W. 723. The rule was not changed by the provisions of Art. 2958, R.C.S., 1925, which provides that the residence of a married man is where his wife resides. That act was passed in 1905, long before suffrage was extended to women in Texas and had reference only to the residence of the husband, who, at that time, was the only member of the community who was entitled to vote, and it was designed only to provide a criterion by which the husband's residence could be definitely established in case of doubt as to his—not the wife's—residence. It was never intended by the law makers to change the long established rule that the residence of the family is established by the will or conduct of the husband. If the law were otherwise, we would have the anomalous possibility of the wife's legal residence being at one place and that of the husband, from whom she is not separated, being at an entirely different place, even in a different county. In our opinion the court below erred in holding that Mrs. Orton was a qualified voter in Oldham County and this cross-assignment of error will be sustained.

W. E. Swart voted for appellee in the election and, upon challenge of appellant, the court held his vote to be illegal upon the theory that he was not a legal resident of Oldham County. This action of the court is challenged by appellee under his thirteenth cross-assignment of error. The evidence shows that Swart lived at Vega and was employed by the Soil Conservation Service of the United States Government on August 25, 1938. He was transferred by the Service to Hereford, in Deaf Smith County, January 15, 1940, and later to Moore County where he was employed by the Soil Conservation Service at the time of the election. He testified that he had never abandoned his residence in Oldham County and, therefore, under the provisions of Art. 16, Sec. 9, of the State Constitution, he was a qualified voter in Oldham County. Under the constitutional provision he did not forfeit his residence in Oldham County by his absence on the business and in the service of the Soil Conservation Service and, in our opinion, the court erred in holding that his vote was not legal. This cross-assignment of error will, therefore, be sustained.

There are a number of other cross-assignments of error presented by appellee and we have carefully considered all of them. We find no merit in any of the remaining cross-assignments and they will be overruled.

The court below found that appellee had received 174 legal votes at the election and appellant had received 173 legal votes. By adding to the total legal votes adjudged to have been cast for appellee, the vote of W. E. Swart makes a total of 175 and, deducting from that total the votes of Mrs. Godwin and Fant Hitson, leaves a total of 173 legal votes received by appellee at the election. By deducting from the 173 votes which the court below found to have been received by appellant, the votes of Gene Halliburton and Mrs. Robert Orton, there remains a total of legal votes received by him, 171. The obvious result is that appellee, C. L. Morris, was legally nominated on the Democratic ticket in the election as County Commissioner of Precinct No. 3 by a majority of 2 votes.

The judgment of the court below will be affirmed.