**LIGHTNER et al. v. McCORD, Co. Atty.**

No. 5297.

Court of Civil Appeals of Texas. Amarillo.
April 28, 1941.

Rehearing Denied May 26, 1941.

Crenshaw, Dupree & Milam, of Lubbock, for appellees.

STOKES, Justice.

On March 30, 1940, simultaneous elections were held in O'Donnell Independent School District No. 15 and Joe Bailey Independent School District No. 11, in Lynn County, upon the questions of whether or not the Joe Bailey and the O'Donnell Independent School Districts should be consolidated and whether or not the consolidated district should assume the outstanding bond indebtedness of the O'Donnell District. In returning the results of the elections, the officials who held the same failed to prepare and execute the formal returns as provided by Art. 3026, R.C.S. 1925, showing the total number of votes polled and the number polled for and against each of the propositions submitted at such elections, but merely returned and delivered to the county judge the tally sheets, ballots and the register of the official ballots. The county judge delivered the envelopes containing these documents to the county clerk who submitted them to the commissioners' court and at the proper time the court examined them and treated the documents so returned as being the returns of the elections. It seems that the election officials probably were of the opinion that some five or six of the ballots cast were either mutilated or unintelligible and did not count them but returned them in a separate envelope. Upon the tally sheets they entered figures which indicated that they had counted 27 of the votes as having been cast in the Joe Bailey District for the consolidation of the two districts, and 28 votes against consolidation. Upon inspecting the tally sheets and ballots, the commissioners' court found that in the Joe Bailey District 32 votes had been cast in favor of consolidation and also in favor of the assumption by the consolidated district of the bonded indebtedness of the O'Donnell District, and that 28 votes had been cast against the consolidation of the two districts and also against the assumption of the bonded indebtedness of the O'Donnell District, and certified the elections accordingly.

This suit was filed by appellants as a contest of the two elections that were held in the Joe Bailey Independent School District No. 11 and they prayed for a decree of the court declaring that a majority of the legally qualified voters of the district

Nelson & Brown and Geo. W. McCleskey, all of Lubbock, for appellants.

had voted against the consolidation and against the assumption of the indebtedness of the O'Donnell District. In their first amended original petition upon which the case was tried appellants set out a large number of irregularities in regard to the procedure observed by the election officials and the commissioners' court, among which were that the commissioners' court, in canvassing the returns of the elections, opened and inspected the envelopes containing the ballots and tally sheets; that they counted the votes in the envelope which the election officials had marked "Challenged" and had not counted; that they made a complete recount of the ballots and based their certificate of the results upon such recount instead of formal election returns; that some of the votes counted by the commissioners' court were illegal and fraudulent votes; that a number of legal votes cast against the two propositions were not counted by the commissioners' court and various votes were counted in favor of the two propositions which were not entitled to be counted because they were insufficient in form or the voters were not qualified to vote; that the person who served as judge of the elections was not the person who had been appointed by the county judge; that the ballots cast at the elections were not signed by the election judge as required by law; that no returns upon either the question of consolidation or assumption of the bonded indebtedness were made upon the forms provided by law; that separate ballot boxes were not used in the elections as required by law but all of the ballots were deposited in the same box which was composed of cardboard instead of metal or wood as provided by law; that the ballots were not placed in ballot boxes but were placed in envelopes and were not preserved under lock and key, but remained open for the inspection of anyone who desired to inspect them after they were returned to the county clerk's office; that the voters were not required to exhibit poll tax receipts or make affidavits that their poll taxes had been paid, and that at least two voters and probably others did not cast ballots at the election because the election judges and clerks advised them that, in order to be qualified to vote, they must have been residents of the school district for six months prior to the election.

The case was tried by the court without the intervention of a jury and resulted in a judgment declaring that the elections had resulted in a majority of the qualified voters in the Joe Bailey Independent School District voting for the consolidation of the two districts and for the assumption by the consolidated district of the bonded indebtedness of the O'Donnell Independent School District; that the elections were valid and that appellants take nothing by their suit. Appellants duly excepted to the judgment and have perfected an appeal to this court.

We do not find it necessary to discuss in detail the large number of assignments of error and propositions of law presented by the briefs. Our disposition of the case must be controlled by four general contentions made by appellants which are, first, that the trial court erred in rendering judgment sustaining the validity of the elections in the Joe Bailey Independent School District because the proposition of whether or not a tax should be levied on the property of the district for the purpose of discharging the O'Donnell District bonds was not submitted to the voters at such elections. Secondly, that the elections were invalid because no separate elections were held upon the two propositions voted upon nor separate notices given nor separate ballot boxes and tally sheets used as required by law. Thirdly, that the declaration of the result of the elections and elections themselves were rendered void by the acts of the commissioners' court in making a recount of the ballots; deciding whether they were properly challenged or mutilated or valid votes, and in altering the results of the election, as reflected by the tally sheets, in such manner as to change the results as entered by the election officials, and, fourthly, that the court erred in refusing to permit appellants, after the evidence was closed and the argument was practically finished, to file a trial amendment alleging vital and essential matters not included in the former pleadings.

■ Referring to the first contention made by appellants the record shows that the two propositions mentioned, that is, whether the school districts should be consolidated and whether or not the consolidated district should assume the bonded indebtedness of the O'Donnell School District, were submitted and the elections were held simultaneously. There was no proposition submitted with reference to the question of whether or not a tax should be levied to pay the interest and principal of the outstanding bonds of the O'Donnell

District and appellants' contention is that the two elections that were held, especially the election to determine whether or not the consolidated district should assume the outstanding bonds of the O'Donnell District, were thereby rendered void and ineffective because the district could not incur an indebtedness in that manner without, at the same time, making provision for the levy and collection of a tax with which to pay the same. Art. 2807, R.C.S. 1925, provides that if, at the time of the proposed consolidation, there are outstanding bonds of any such districts, then at an election held for that purpose on some future day, there shall be, or at the election held for the purposes of consolidation, there may be, submitted to the qualified taxpaying voters of such proposed consolidated district the question of whether or not the consolidated district shall assume and pay off such outstanding bonds and whether or not a tax shall be levied therefor. There is no intimation in the statute, nor in any other statute, as far as we know, which would render void an election either upon the question of consolidation of two or more districts or of the assumption by the consolidated district of bonded indebtedness of one of the merged districts merely because an election was not held at the same time upon the question of whether or not a tax should be levied to pay the assumed indebtedness. On the other hand, Art. 2807 clearly provides that the election to determine whether or not a tax shall be levied may be held simultaneously with the elections on the question of consolidation and assumption of indebtedness or that such election shall be held on some future day. No tax could be levied by the district, of course, without authority of the voters expressed at an election held for that purpose, but that does not mean that such authority must be obtained simultaneously with the assumption of the obligation. When the election upon the question of consolidating the two districts was held, the results declared and the proper orders entered consolidating the two districts, the old districts ceased to exist. No power existed in any tax levying body except that of the new district and, without a favorable vote of the qualified voters, no school trustees or other body has authority to levy taxes for such purpose. Under the provisions of Sec. 3, Art. 7 of the Constitution, Vernon's Ann.St., ad valorem taxes may be authorized within school districts for the main-tenance of public free schools and the equipment of school buildings if a majority of the qualified property tax-paying voters of the district, at an election held for that purpose, shall vote such tax. The statute, Art. 2807, plainly provides that such election may be held either at the time the proposed consolidation or the proposed assumption of outstanding indebtedness is submitted, or on some future day, and we can find no legal basis for the conclusion that the elections here involved were rendered void merely because an election was not held to determine whether or not a tax should be levied to discharge the bonds of the O'Donnell School District which were assumed by the consolidated district. Pyote Independent School Dist. v. Dyer, Tex.Com.App., 34 S.W.2d 578; Yorktown Independent School Dist. v. Afflerbach, Tex.Com.App., 12 S.W.2d 130; O'Brien v. Snelson, Tex.Civ.App., 82 S.W.2d 679.

The next contention made by appellants is that, considering the manner in which the elections were conducted by the election officials, the practical results were that only a single election was held on both of the submitted propositions instead of separate elections as provided by the statute, Art. 2807, supra, and the election was, therefore, void as not having been held in accordance with the law. The record shows that the elections were held simultaneously but that separate ballots were used, upon one of which was printed in three separate lines the words:

"OFFICIAL BALLOT.
"FOR the consolidation.
"AGAINST the consolidation."

Upon the other ballot was printed the following:

"OFFICIAL BALLOT.
"FOR assuming the outstanding bonded indebtedness of O'Donnell Independent School District and Common School District No. 15.
"AGAINST assuming the outstanding bonded indebtedness of O'Donnell Independent School District and Common School District No. 15."

Separate and distinct tally sheets were used by the election officials and there is no contention or intimation that any voter in the district was confused or failed thoroughly to understand that two separate elections were being held. Indeed the ballots themselves plainly informed the

voters that they were voting on two separate and distinct propositions and, while the testimony shows that all of the ballots were deposited in a single ballot box, there is no showing that they were so mixed or intermingled as to create any confusion whatever or admit of any question as to the number of ballots cast for and against each of the propositions submitted. The ballots and tally sheets were introduced in evidence and were before the court at the trial. The court found that a majority of the legally qualified voters of the district had voted in favor of consolidation and in favor of assuming the indebtedness of the O'Donnell District, and it seems from the record that no serious question can be raised that the finding was correct and in keeping with the facts. We, therefore, find no merit in this contention of appellants and their assignments of error and propositions relating thereto will be overruled.

■ Under the next group of assignments and propositions, which constitute the third contention of appellants as arranged by us, the contention is made that the commissioners' court had no authority to inspect the ballots cast at the elections and make a recount thereof, nor to decide whether certain ballots were challenged or mutilated and thereby rendered invalid, nor did they have authority to alter the results of the elections as reflected by the tally sheets and thereby change the results as entered by the election officials. As we have already stated, the election officials failed to prepare, execute and return the official documents known as "returns". The commissioners' court, therefore, had before it nothing except the tally sheets and ballots cast by the voters when they undertook to canvass the returns of the election. It seems that the election officials had counted the votes which they considered to be legal votes and entered at some place on the tally sheets the figures 27 and 28 which, appellants contend, indicated that the election officials had found that 27 votes had been cast in favor of each proposition and 28 votes had been cast against each of them. This makes a total of 55 votes and when the commissioners' court examined the tally sheets and ballots they found that 60 votes had been cast and that all of them were legal votes. In the absence of official returns it cannot with certainty be said that the election officials considered five of the votes to be illegal

and, in the manner in which the returns were presented to the commissioners' court, it would seem that the commissioners' court could not have made a canvass of the returns of the election in any manner other than that which was adopted by them. There is no suggestion that the county commissioners followed the course adopted by them in order to revise the work of the election officials. They simply examined such documents as were returned to them and if they had not followed the procedure which they did, it would have been impossible for them to make any declaration whatever concerning the results of the election. We do not agree with appellants that the acts of the commissioners amounted to an alteration of the returns. The original tally sheets and ballots have been sent up with the record and from them it appears that the figures entered by the commissioners' court which are denominated by appellants as alterations were simply the results of a count of the ballots actually cast. There is no testimony presented nor any substantial showing in the record that the commissioners' court counted any illegal votes or discarded any legal ones, nor that they erased, eliminated or in any manner altered the returns, if such they may be termed, of the election officials.

■ Under these assignments and propositions, appellants make the further assertion that the ballots were not securely encased in a wooden or metalic box; that they were delivered to the county judge instead of the county clerk as provided by the statute; that the person who presided as election judge was a different person from the one appointed by the county judge; that the ballots were not signed by the judge of the election; that the election officials made no returns upon blanks furnished for tabulating the results of the elections, all in disregard of the provisions of the statute governing such elections, and, because of these and a large number of other similar irregularities, the elections were void. It has long been the established rule in this state that statutes regulating the manner of holding elections are merely directory and that a departure from their provisions will not invalidate an election unless such departure or irregularity has affected or changed the result of the election. While appellants exhibit an imposing list of irregularities in the manner in which the election officials conducted these

elections, it is not shown nor even contended by appellants that any of them had the effect of falsifying the result of either of the two elections that were held. It has many times been said by our courts that the object of every popular election is to ascertain the will of the qualified electors in the area to be affected thereby upon the issue or issues submitted to them. Mere informalities that afford no just grounds for the conclusion that the will of the qualified electors has been in any manner thwarted, diverted or suppressed will not be considered of sufficient importance to render an election void. Especially does the rule apply in cases such as this where the record clearly shows that the will of a substantial majority of the electors in the district is reflected by the ultimate declarations of results and orders entered by the authorities charged with the duty of entering them. There is, therefore, no merit in these contentions of appellants and their assignments of error in respect thereto will be overruled. Hill v. Smithville Independent School Dist., Tex.Com.App., 251 S.W. 209; Williams v. Glover, Tex.Civ.App., 259 S.W. 957; Orth v. Benavides, Tex.Civ.App., 125 S.W.2d 1081; Roper v. Scurlock, 29 Tex.Civ.App. 464, 69 S.W. 456; Sykes v. Pandora Independent School Dist., Tex.Civ.App., 14 S.W.2d 124; Mecaskey v. Ratliff, Tex.Civ. App., 159 S.W. 115. An examination of the opinions of the courts in the cited cases will reveal that many of the identical questions raised by appellants in this case have been settled adversely to their contentions and none of the acts or irregularities complained of by them differs in principle from those specifically involved in the cases above cited.

Finally, appellants assign error of the court below in refusing to permit them to file a trial amendment in which, in addition to the allegations of their first amended original petition, they set up the order made by the county judge calling the election and the notice that was posted at various public places in the county in response thereto, both of which they alleged were irregular and wholly insufficient as preliminary and jurisdictional requisites for the holding of a legal election. The trial amendment was presented, with a request for leave to file it, after the close of the testimony and after appellants had concluded their opening argument and appellee's counsel had concluded their argument.

The court declined to permit appellants to file the trial amendment upon the ground that it came too late. The rule is well established in this state that, in the matter of allowing amendments to pleadings pending the trial in order to meet the proof, the trial judge should allow the amendment if it appears that the new matter contained in it was not known to the party seeking to file the same or, by the exercise of reasonable diligence, he could not have ascertained the same when his former pleadings were filed, and that it does not involve new issues or inject into the case new matter which would interfere with the orderly progress of the court's docket or work injustice upon other parties to the litigation. The allowing or refusing of such amendments, however, is within the sound discretion of the trial court and where it appears that the new matter was known to the party seeking to file the amendment, or to his counsel, or, by exercising reasonable diligence, it could have been known to them at such time as would have enabled them to include it in his former pleadings or, if it injects new matter of the nature we have mentioned, the request to file such pleadings should be denied. Jackson v. Blair, Tex.Civ.App., 165 S.W. 522; Guinn v. O'Daniel, 5 Tex.Civ.App 512, 23 S.W. 850. The trial amendment contained allegations to the effect that the propositions submitted to the electors by the ballots used at the election were not the same as those contained in the order of the county judge calling the election nor the same as those included in the notices that were posted in public places informing the voters of the nature, date and purpose of the election. No mention of these things had been included in the former pleadings and, that they injected into the case new issues of such a nature as to disrupt the orderly progress of the trial and in all probability require the court at least to suspend the trial in order to give appellees an opportunity to prepare an answer and make a reasonable effort to obtain evidence that would neutralize the effect of such allegations, cannot be questioned. Furthermore, the order of the county judge and a copy of the notice had been on file in the office of the county clerk since before the original pleadings were filed and were accessible to appellants and their counsel during all of the time that elapsed before the case was called for trial. The bill of exception contained in the record

shows that counsel for appellants, in open court, stated that the matters set forth in the trial amendment had been called to their attention after the close of the evidence and during the argument of the case. It is not shown that counsel did not know of it nor that it could not easily have been ascertained. This falls far short of the exigent circumstances that must be shown before it can be said that a trial judge abuses his discretion in refusing permission to file a trial amendment, especially under the circumstances under which it was tendered in this case. Even if it had been filed, however, and the allegations contained therein had been established, we conceive of no reason why the result of the trial would have been affected in any way. As we have already said, and as has been held by our courts in many cases, the requirements of the election law are but directory and departures therefrom constitute nothing more than irregularities of the officers in the calling, giving notice of, and holding the elections and, unless such irregularities have misled the electors or prevented them from exercising their free and fair privileges as legally qualified voters or from having fair estimates of the results declared and orders entered, they will not vitiate an election. This rule of interpretation extends to the matter of posting notices of the election. In the case of Wallis v. Williams, 50 Tex.Civ.App. 623, 110 S.W. 785, 787, the Court of Civil Appeals for the First District said: "The failure to post the notices would not render a county seat election void, when all the evidence shows that the time and places for holding the election were generally known throughout the county, and there is no evidence that any voter failed to participate in the election for want of notice of the time and places at which the election would be held, and nothing to create even a suspicion that the failure to post notices, if there was such failure, in any way af-

fected the result of said election. Buchanan v. Graham, 36 Tex.Civ.App. 468, 81 S.W. 1237."

■ In the instant case there is no contention that any voter in the district was not informed of the time, place and purposes, when, where and for which the elections would be held. The register of official ballots, signed and returned by the presiding judge of the elections, shows that 62 ballots were received by the officers of the election and the tally sheets and ballots returned to the county judge show that 60 of these were actually voted. Art. 2984, R.C.S., provides that there shall be furnished one and one-half times as many official ballots as there are qualified voters in the precinct, as shown by the list required to be furnished by the tax collector to precinct judges. It must be assumed that this statute was substantially complied with and that 62 ballots constituted one and one-half times the number of the estimated electors in the school district. The only reasonable conclusion that can come from this is that practically every elector in the district cast a vote and there is no intimation in the record that any elector failed to attend the elections and cast his vote on account of lack of information concerning the time, place and purposes for which the elections would be held. Hill v. Smithville Independent School Dist., Tex.Civ.App., 239 S.W. 987; Id., Tex.Com.App., 251 S.W. 209, 210; Sykes v. Pandora Independent School Dist., Tex.Civ.App., 14 S.W.2d 124; Williams v. Glover, Tex.Civ.App., 259 S.W. 957.

We have carefully considered all of the contentions made by appellants in the various assignments of error and propositions of law presented in their brief and, in our opinion, no reversible error is shown. The judgment of the court below will, therefore, be affirmed.