**Alfred FARRELL, Appellant,**

v.

**Henry JORDAN, Appellee.**

No. 13711.

Court of Civil Appeals of Texas.

Houston.

Sept. 22, 1960.

Rehearing Denied Sept. 29, 1960.

Davis, Kee & Thomas, Leland B. Kee, Angleton, for appellant.

Wellborn & Britt, Charles W. Britt, Alvin, for appellee.

BELL, Chief Justice.

This is an election contest. The appellant was certified by the Democratic Executive Committee of Brazoria County as the Democratic nominee for County Commissioner, Precinct 3, of Brazoria County, the certification resulting from a determi-nation by the committee that he had won the run-off primary as he received 1,365 votes to 1,362 votes for appellee, Henry Jordan. Appellee, on June 11, 1960, filed his petition in the District Court contesting the election, the basis of the contest being the illegality of various votes. On trial the court determined that certain votes were illegally cast and determined that in the run-off primary Jordan received 1,341 legal votes and Farrell received 1,331 legal votes. The court declared Jordan to be the Democratic nominee.

Appellant first complains of the action of the trial court in overruling his motion for continuance. The basis of the motion for continuance was that on June 20, the date the case was set for trial, appellee filed his First Amended Original Petition and that appellant could not announce ready, because he had not had an opportunity to examine the pleading or to make exceptions to its form and substance. Too, he complained that new, additional and separate causes of action had been set up. Specifically, he complained that paragraph VI set up 21 votes not previously attacked; that paragraph VII set up 2 additional votes, and that paragraph VIII attacks all the votes cast in Election Box 18 at Sandy Point.

It is to be noted that the suit was filed on June 11 and seven votes were attacked. Appellant was given the requisite notice to answer within five days, which he did, and was given requisite notice of the setting of the case for trial for June 20. On June 20, appellee did file his First Amended Original Petition. For the first time, the votes of numerous other electors were attacked, but we will notice only those electors who were added whose votes are attacked on this appeal. There were other electors added, but no mention is made of them on appeal, so that whatever action, if any, the trial court may have taken is apparently not unsatisfactory to appellant. In the amended pleading H. H. Wehrly, A. G. Dunn, Mamie E. Ford, Willie Fleming, Lucille Fleming,

Mrs. J. R. Horn, W. A. Lewis and Mrs. W. A. Lewis were added. Appellant complains, in the manner hereinafter discussed, of the manner in which the trial court disposed of these electors' votes.

We hold that the trial court did not err in overruling appellant's motion for continuance.

■ The procedure to be followed in a primary election contest is provided by Article 13.30 of the Election Code, V.A.T.S. Section 6 of this Article expressly authorizes the parties to file amended pleadings setting up new causes of action or grounds of defense at any time prior to announcement of ready for trial. It is true that Sec. 5 authorizes the trial court to grant one postponement of five days for good cause shown. However, whether he does so is within the sound discretion of the trial court.

■ Even should it be said that there was an abuse of discretion in not granting appellant's motion for continuance, there is no reversible error because no harm is shown to have resulted to appellant. It is merely contended in the abstract that it was prejudicial and unfair not to grant the motion. However, it is in no wise here pointed out to us in what respect the amended pleading was defective as to substance or form so as to be subject to special exception. Further, there has been no attempt here to demonstrate even the possibility that any investigation of the facts surrounding the voting by any of the added electors would in anywise contradict the facts developed. It is true that prior to going to trial appellant apparently had no opportunity to investigate the voting of the added electors, but it is noted that the case went to trial on Monday, June 20, and continued through Monday, June 27. In addition to this, after the court announced its decision, appellant had at least four days before being required to give notice of appeal and to file his bond in which to investigate and file a motion for new trial showing

evidence contrary to that developed on trial. We do not mean a motion for new trial is a necessary procedural step, but it is available as a means to develop facts which would demonstrate harmful error by the trial court in refusing to grant a continuance. The burden is on the complaining party to show that erroneous action by the trial court was reasonably calculated to and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. There is no suggestion in the record that appellant made any type of investigation or that he didn't after trial commenced, have sufficient time to investigate. There is, therefore, nothing in the record showing harm to appellant.

■ Appellant next contends the court erred in deducting the votes of Willie Fleming and his wife, who did not live in the precinct where they voted, from the total votes cast for appellant. He urges these votes should have been deducted from the total votes cast for Jordan.

We are of the view that appellant is correct.

Each of the above electors testified that they voted for appellee Jordan. The witnesses were both put on the stand by appellee. After Willie Fleming testified he voted for appellee, appellee, over appellant's objection that the witness being appellee's witness, appellee could not impeach him, introduced a written statement signed by Willie in which he said he and his wife voted for appellant Farrell. Appellee later called a Mr. Myrick who testified that following the election Willie told him that he voted for Mr. Farrell. We fail to find any objection to this testimony. Appellee called Elliott May, who testified he went to the polls with Lucille and she said she was voting for Mr. Farrell and she wanted him to. He said he saw her vote, though he did not say he saw here vote for Farrell. The appellant objected to May's testimony on the ground that the witness had been subpoenaed by appellee and the testimony of

May was hearsay. Appellee stated he was offering it for impeachment.

■ While appellant urges here that the Flemings were appellee's witnesses as he put them on the stand and could not be impeached by him, it is unnecessary for us to discuss such position. We will assume that the court acted correctly in admitting the statement and the impeaching witnesses' testimony. These items of testimony are as to appellant wholly hearsay. There was no competent evidence to establish that the Flemings voted for Farrell. The fact that Lucille worked as a maid for Farrell is not sufficient to lead to that conclusion. The only competent evidence is the testimony of the witnesses that they voted for Mr. Jordan. The hearsay testimony that they voted for Farrell is not substantive evidence. A fact finding may not rest on wholly hearsay testimony. Appellee urges that Article 13.30 of the Election Code, Sec. 7, provides the court shall have wide discretion as to admissibility of evidence, the purpose being to subserve the ends of justice rather than strict compliance with the technical rules of evidence. Also, he urges, the public has an interest in an election contest. We are unwilling to hold that this means that how an elector voted may be established alone by hearsay testimony.

Appellant complains of the action of the trial court in deducting the vote of Elliott May from his total vote because there was no pleading to support a contest of May's vote and because the court had to merely guess how he voted. A trial amendment was allowed.

We overrule this point.

■ Under Article 13.30 of the Election Code, the trial court is authorized, in his discretion, to allow the parties to amend their pleadings after commencement of trial. While the discretion may not be arbitrarily exercised to the prejudice of a party, amendments should be liberally allowed to the end that the true results of an election be obtained. As previously discussed,

no harm is shown to have resulted by allowing the amendment.

The case of McJimsey v. Yates, Tex.Civ. App., 324 S.W.2d 438, error dism., cited by appellant, is not applicable. The court did there condemn the court's action in allowing numerous voters to be called at random where there was no pleading, but reversal was not because of this. Too, the court condemned the trial court's action in opening the ballot boxes and checking all votes and not just those previously determined to be illegal. We have no such situation here. The case was reversed because of no evidence to support the trial court's judgment.

The trial court concluded on sufficient evidence that May voted for Farrell. While at places in his testimony he said he intended to vote for Farrell and thought he did but he wasn't sure, at another point he testified positively he voted for Farrell.

Appellant complains the trial court erred in deducting from him the votes of Mr. and Mrs. S. R. Brown, Mr. and Mrs. O. R. Riefel, Mr. and Mrs. C. R. Anderson and Gary Anderson, because there was no pleading attacking their votes.

An examination of the transcript reflects that appellant, by trial amendment, himself attacked the votes of the Andersons. What we have previously said about the discretion of the court in allowing trial amendments is here applicable to the other electors named in the above paragraph, as is our statement that there is no showing of harm.

The case of Lightner v. McCord, Tex. Civ.App., 151 S.W.2d 362, no writ hist., cited by appellant is an election contest, but the case is factually inapplicable because there the trial court in the exercise of his discretion refused leave to file the trial amendment and the Court of Civil Appeals upheld such action.

The other cases cited did not involve election contests and we deem them inapplicable. Great liberality in the matter of amending pleadings, including trial amend-

ments, is envisioned by Art. 13.30 of the Election Code.

Appellant asserts that the trial court erred in not deducting the vote of Fred Fields from the votes cast for appellee. The basis of this assertion is the claim that Fields' wife resided in Bay City, Matagorda County, and Art. 5.08 of the Election Code provides that the residence of a married man is where his wife resides, if they are not permanently separated.

The court, in not deducting the vote, necessarily found the legal residence for voting purposes of Fields was at Rosharon in Brazoria County where he voted. If there is evidence to sustain such finding, we may not disturb it.

The only evidence is from Fields himself. He testified he and his wife owned a home in Bay City. His wife lived in the home because she doesn't like things at Rosharon. His permanent residence is Rosharon. He owns a business in Rosharon and has for 25 years. He intends his residence to be at Rosharon where he moved 25 year ago. He has lived there continuously since then. His wife wants to live in Bay City. Except for the first two years after he moved to Rosharon, he has voted at Rosharon. He intends that to be his home as long as he has his business and then it will be Bay City if his wife will let him come home. But now he intends Rosharon to be his home. He and his wife have been married 49 years. He goes to Bay City nearly every weekend, except during harvest season, and stays in the home. She also comes over to Rosharon and stays with him on some weekends. He eats and sleeps 90% of the time in Rosharon. He claims a homestead exemption on the home in Bay City. If he were to sell out in Rosharon he would go back to Bay City. He has served as President of the School Board of Rosharon. Also he has been on the Angleton Independent School Board.

■ No case has been cited by either party, and in our independent search we have found none, covering a situation such as is here presented. We have, however, reached the conclusion that the trial court did not err in holding Fields to be a qualified voter at Rosharon.

We think when the legislature used the term "residence" of the wife, it meant the legal residence of the wife and not merely where she might physically reside. The real effect of the cases discussing the matter seems to be that residence as used in the statute means domicile. See McBride v. Cantu, Tex.Civ.App., 143 S.W.2d 126; Harwell v. Morris, Tex.Civ.App., 143 S.W. 2d 809; Snyder v. Pitts, 150 Tex. 407, 241 S.W.2d 136; Major et al. v. Loy, Tex.Civ. App., 155 S.W.2d 617; Hill v. Mays, Tex. Civ.App., 278 S.W. 919. See also Vol. 15–B Tex.Jur. § 32, pp. 387–389, for other authorities discussing the matter.

The husband has the right to choose the place of domicile or residence. Harwell v. Morris, supra.

When the question arises as to what is one's domicile, it must be determined in the light of all the facts. Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865. Here Fields testified he intended to reside in Rosharon. He had done so for 25 years, except for weekends spent at Bay City. He voted for 23 years at Rosharon. He served as an official in Brazoria County. He owned his business in Rosharon where he slept and ate. This is sufficient to support the trial court's finding. This was the wife's legal residence.

Mr. and Mrs. W. A. Lewis were held by the court not to be residents of Brazoria County for six months prior to the election and their votes were deducted from appellant.

■ The court correctly held them not to be residents of Brazoria County.

Prior to April 4, 1960, Mr. and Mrs. Lewis lived in rented quarters in Houston. They had resided in Harris County about 20 years. They lived in the same house all

of this time. They had never lived in Brazoria County prior to April, 1960. They paid their poll tax in Brazoria County in January, 1960. Mr. Lewis operates a crop-dusting business and keeps his planes and supplies in Harris County. The business was operated from Harris County. In July, 1959 Mr. Lewis entered into a contract for the construction of a home in Alvin on a lot owned by him. It was to be completed, according to the contract, within 100 days. It was not, however, completed until shortly before April, 1960. Utility deposits were made in Alvin in November 1959. The only time spent in the place at Alvin before they moved there in April was some nights when doing work on the house, but they did not sleep there. He and his wife both worked on the home some of these nights. Prior to February, 1960, the only items moved in were ladders and cleaning equipment they were working with. They started getting some of his mail at Alvin in January or February. They continued to get the family mail in Houston. They never voted in Brazoria County prior to June 4, 1960. The testimony was they intended after construction of the house was commenced to make Alvin their permanent home. Some vases and silverware were moved in 1959.

Alvin did not become the legal residence of the Lewises until they moved into the home at Alvin in April 1960. Until that time Houston was their legal residence and they merely entertained the intention to make Alvin their home. Legal residence cannot be established by intention alone. There must be a concurrence between actual physical residence and intention to make the place where physical residence occurs the home. Houston had been the Lewises' residence for 20 years. They began building the house in Alvin with the intention of making it their home when it was completed. However, they continued to live in Houston until April, 1960. They never lived in Alvin until then. There was no abandonment of the Houston residence until they physically moved from it with the intention not to re-turn to live there. Alvin became their residence only when they moved to Alvin and commenced living there with the intention to make it their home.

Appellant finally complains again of the action by the trial court in deducting the votes of the hereinafter named electors from his total votes because of the absence of pleading. We find on examining the transcript that by the First Amended Original Petition the votes of all of the parties, except Mamie Ford, were attacked. Hers was attacked by trial amendment. We find no error for the reasons previously stated, in the action of the trial court in allowing these amendments.

Appellant says there was no evidence as to how Mr. and Mrs. T. W. Wright, Mamie Ford, B. A. Borskey, Mrs. E. A. Weems and Mrs. Minnie Brightwell, A. G. Dunn and H. H. Wehrly voted. These persons voted by absentee ballots. The appellant contends the absentee ballots were never introduced in evidence but were only marked for identification.

■ We are not in accord with this contention but hold the ballots were sufficiently in evidence.

The record reflects that after these absentee votes of these voters had been determined not to be valid, the court opened the stub and ballot box to determine how these voters voted. This appears in the statement of facts:

"Mr. Wellborn (attorney for Appellee): Let the record show please * * * Your Honor the plaintiff Henry Jordan would show that the evidence adduced * * * establishes as a matter of law a number of the absentee ballots cast * * * were illegal and void and therefore should not be counted, and that the ballots themselves are available for inspection by the Court, as well as the stubs from such ballots, and the plaintiff moves the Court at this time to open said absentee

ballot box and take from said boxes the absentee ballots challenged by plaintiff to determine how said ballots were voted * * * and to then deduct from the totals of various candidates those absentee ballots shown to have been voted for them that are so found to be void and illegal. Your plaintiff would show that the ballots are under the law of this State the best evidence as to how the voter voted."

This motion was later renewed, but the Court said he was going to wait until the case was over to open the ballot box. The parties rested their evidence before the ballot boxes were opened, but we think it is clearly shown this was subject to the evidence that should come from opening the ballot boxes.

On Monday, June 27, the record shows the absentee ballot boxes and the stub boxes were opened by the court in the presence of the attorneys for the parties. The ballots were examined by the Court and then the Court told his reporter to mark the stubs, giving them the same exhibit as the ballot. The reporter then noted, "Whereupon, Court's Exhibits 1, 1A, 2, 2A, 3, 3A, 4, 4A, 5, 5A, 6, 6A, 7, 7A, 8, 8A, 9, 9A, 10 and 10A were identified by the reporter and the same are attached hereto and made a part hereof."

We think all of the above reflects a sufficient tender into evidence and that the ballots were considered by the court and all parties as being in evidence.

The following named voters voted by absentee ballot and their votes were held to be illegal because for the reason stated here after each name there was not a compliance with Article 5.05 of the Election Code as amended by the Acts of the 56th Legislature, Chapter 483, p. 1055.

T. W. Wright signed the application for an absentee ballot before a notary public in Brazoria County, though the envelope containing it which was sent to the County Clerk was mailed from Houston. The carrier envelope containing the ballot was mailed from Wimberly, Texas, but the voter swore to the affidavit on the carrier envelope before a Brazoria County Notary Public. He signed the application for the ballot in Alvin. He mailed the application from Houston. He works in Houston and mails all of his letters there. He signed the affidavit on the carrier envelope in Alvin. He mailed it at Wimberly where he had gone for the weekend. He marked his ballot in Alvin. He was physically able to go to the Courthouse in Alvin and vote but it was not convenient.

The facts are the same with regard to Mrs. Wright.

Mrs. Arleigh Chambers lives in Alvin. She signed the application for a ballot in Alvin before a Notary Public of Brazoria County. She directed the ballot be mailed to her at General Delivery, Friendswood, Texas. The ballot envelope was postmarked at Friendswood but Mrs. Chambers did not mail it. She supposes the Notary took the application with her. Mrs. Chambers did not live at Friendswood. The ballot was brought to her by Mrs. Savell and another lady. She marked the ballot in Alvin and made the affidavit on the carrier envelope in Alvin before a Brazoria County Notary. The carrier envelope is postmarked Friendswood. Mrs. Savell and the other woman took the ballot with them. Mrs. Chambers did not mail the carrier envelope at Friendswood. She broke her foot on the morning of the election. She would not have voted if she had not voted absentee because she did not want to stand in line. She is 68 years old. She has had arthritis for some time.

B. A. Borskey signed the application for a ballot before a Notary Public of Brazoria County. He directed the ballot be sent him at an address in El Paso. The ballot envelope is postmarked Houston. Who mailed it is not reflected by the record. The carrier envelope is postmarked El Paso. The affidavit on the carrier envelope was executed before an El Paso Notary. He signed

the application for the ballot in Brazoria County. He left town the next day. He was not sick or disabled. There was nothing to prevent his going to the Courthouse to vote. He actually voted and mailed the ballot from El Paso.

Mrs. E. A. Weems signed the application for a ballot before a Notary of Brazoria County and directed the ballot be sent her at an address in Houston. The ballot envelope was postmarked Houston. The carrier envelope was postmarked Houston and the affidavit was made before a Harris County Notary. Mrs. Weems signed the ballot application at her home in Alvin. The evidence does not show who mailed the ballot envelope.

Mrs. Minnie Brightwell signed the ballot application before a Notary of Brazoria County in her home at Alvin. She directed the ballot be mailed to her at an address in Falls Church, Virginia. The ballot envelope is postmarked at Houston. The record does not reflect who mailed it. The carrier envelope is postmarked Falls Church, Virginia and the affidavit was executed before a Notary in Alexandria, Virginia.

In each instance the absentee voter applied for an absentee ballot because of expected absence from the county.

The absentee votes of A. G. Dunn and H. H. Wehrly were not counted because they were not qualified electors as they had not lived in the county six months.

Mamie Ford voted absentee because of illness. Her vote was held illegal because the ballot was mailed to Mrs. Savell, the Notary, and she brought it to the voter after getting it from the postoffice.

Mr. and Mrs. Wright and Arleigh Chambers were held to have voted illegally because both the ballot application and the carrier envelope affidavit were executed in Brazoria County and the ballots were marked in Brazoria County, and their votes were deducted from appellant's total vote.

Mr. Borskey, Mrs. Weems and Mrs. Brightwell had their votes deducted from appellant's total vote.

These seven votes were cast in a manner not in accord with the provisions of Article 5.05 of the Election Code as it was amended by the Legislature in 1959.

Appellant contends that since there was no fraud shown (and the Trial Court stated there was no fraud, and we find no evidence of fraud), the votes should have been counted. He contends the statute prescribing the manner in which an absentee vote, is purely directory.

 Without reviewing the authorities, it is sufficient to say that they were all decided prior to the 1959 amendment of the statute and did hold the statute as to the manner of casting the vote, in the absence of fraud, was directory. If the statute were the same now as it was when the various cited cases were decided, we would hold the statute directory and require that the votes be counted. However, we are of the view that by the amendment in 1959 the Legislature made the manner of casting absentee votes mandatory and intended that if the statutory requirements were not complied with the votes were void and should not be counted.

Subdivision 1 of Article 5.05 provides in the second paragraph as follows:

"Absentee voting shall be conducted by two methods: (1) voting by personal appearance at the clerk's office, and (2) voting my mail. All electors coming within the foregoing provisions of this subdivision [voters who expect to be absent from the county or who because of disability or illness cannot go to the polls] (brackets ours) may vote by personal appearance at the clerk's office if they are able to make such appearance within the period for absentee voting."

There then follows this significant provision: "the following persons, *and no oth-*

*er* (emphasis ours), may also vote by mail:" Then it is provided in paragraph (a) that qualified electors who because of sickness or physical disability cannot appear at the polling place on election day may vote by mail. Then this paragraph provides the application shall state the address to which the ballot shall be mailed and such address *must* (emphasis ours) be either the elector's permanent address or the address where he is temporarily living. *If the ballot is mailed to any address other than one of the foregoing, it shall be void and shall not be counted.* (Emphasis ours.)

Paragraph (b) provides that persons who expect to be absent from the county on election day *and who are absent from the county of their residence at the time of applying for a ballot* (emphasis ours) may vote absentee. It is further provided the clerk shall not mail a ballot unless the envelope carrying the application is postmarked outside of the county and the ballot shall be mailed to the elector at an address outside of the county. The *ballot shall not be counted* (emphasis ours) unless the envelope in which the application is received and the carrier envelope carrying the ballot are each postmarked outside of the county and the affidavit on the carrier envelope is certified by an officer other than an officer of the county of the elector's residence. This paragraph then provides that electors not coming within (a) and (b) who expect to be absent on election day *may vote only by personal appearance at the clerk's office.* (Emphasis ours.)

Subdivision 6 provides for the special election board to count the absentee ballots. It provides the board shall open the carrier envelope and shall determine whether the elector is a qualified voter *and if he has complied with all applicable provisions to entitle his vote to be cast.* (Emphasis ours.)

It further provides the board shall ascertain if the *voter voted in a manner authorized and duly executed the application and affidavit* (emphasis ours) and if the board finds the elector did, his vote shall be counted.

We hold that these provisions with respect to the manner of voting are mandatory and if they are not complied with the vote cannot be counted.

With regard to Mamie Ford's vote which was cast absentee because of her physical condition, it is noted that Mrs. Savell, the Notary, had the ballot mailed to her own address at the postoffice and she picked the ballot up and took it to Mrs. Ford. This article expressly provides the ballot *must* be sent to the elector's permanent address or the temporary address where the elector is living. It then expressly provides if the ballot is sent to any other address it is void and shall not be counted.

In the cases of Mr. and Mrs. Wright and Arleigh Chambers, they each applied for the ballot while in Brazoria County, marked the ballot in Brazoria County and the certificate on the carrier envelope was executed before a Brazoria County Notary Public. This subdivision provides the ballot shall not be counted, if, among other things not necessary to notice here, the affidavit on the carrier envelope is executed before an officer of the county of the elector's residence. Therefore, these three votes should not, as the Trial Court held, have been counted.

B. A. Borskey, Mrs. E. A. Weems and Mrs. Minnie Brightwell were all present in Brazoria County when they applied for an absentee ballot. Their envelopes carrying the application were mailed outside the county and they cast their ballot out of the county. The only thing they did not do was to go to the County Clerk's office personally. We hold, however, this makes their vote void. This subdivision provides, among other things, that a person who wishes to vote absentee because he expects to be absent from the county on election day, may do so *only* if he expects to be

absent *and is absent from the county at the time of applying for the ballot.* It is further provided that if a person does not come within the circumstances authorizing a vote by mail because of illness or expected absence from the county, the elector may vote only by personal appearance at the Clerk's office. Then there is enjoined upon the election board the duty of ascertaining if the elector has complied with all applicable provisions of this section to authorize his vote to be counted. One of these is that the voter must be absent from the county when he applies for his ballot. The board also has the duty to determine if the application is duly executed. It is not duly executed if it was executed in the county of the elector's residence. If the board finds, among other things, that the application was duly executed, it shall count the vote. While the statute does not expressly say if the application was not duly executed the ballot shall not be counted, we think it a necessary implication in the light of the whole statute.

The result is that the Trial Court acted correctly as to all voters except as to the Flemings. Their votes should have been taken from appellee but they were taken from appellant. The result is that appellant received 1,333 votes and appellee received 1,339 votes. Appellee is declared the Democratic nominee.

The members of the Election Committee of Brazoria County are directed and ordered to place the name of Henry Jordan on the General Election ballot as the nominee of the Democratic Party for Commissioner, Precinct 3, Brazoria County, Texas.

The judgment of the Trial Court is affirmed.

A motion for rehearing will be entertained if filed by Tuesday, September 27, 1960, at 9:30 o'clock a. m.

## On Motion for Rehearing

The appellant's motion for rehearing is overruled.

Appellee has filed a motion asking that we overrule appellant's motion for rehearing and that the mandate of this Court issue immediately.

Appellee's position is that Article 13.30 of the Election Code provides that the Supreme Court shall have no jurisdiction in an election contest of this kind and our jurisdiction is therefore final.

Appellant, in reply to this motion, cites the cases of Oliphint v. Christy, 157 Tex. 1, 299 S.W.2d 933, and Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627, both cases involving election contests, in each of which the Supreme Court held it had jurisdiction under Articles 1728 and 1821, Vernon's Ann.Tex.St. The Oliphint case was one where the validity of a statute was passed on by the Court of Civil Appeals. The Duncan case was one where the decision of the Court of Civil Appeals was in conflict with other Courts of Civil Appeals decisions.

There has been no question raised in the case before us concerning the validity of any statute. We merely construed Articles 5.05, 5.08 and 13.30 of the Election Code, the validity of which no one questions.

We are convinced there is no conflict between our decision in this case and any decision of the Supreme Court or another Court of Civil Appeals.

We are, therefore, of the opinion that our jurisdiction is final in this case.

The General Election will be held November 8, 1960. The ballots must be printed so that absentee voting may commence 20 days before such election. Time will of course be required to print the ballots. If we do not immediately issue the mandate and appellant takes the full 30 days in which to file an application for writ of error, appellee may be effectively kept off the ballot as a candidate. If we issue our mandate all uncertainty as to the duty of the County Clerk is removed, that is, he is bound to place the name of appellee on the

ballot. However, there will be sufficient time before printing of the ballots for appellant to be relieved of the effect of our judgment through original proceedings in the Supreme Court so he will be fully protected if the Supreme Court has jurisdiction and we are wrong in our decision of the case.

The appellee's motion to issue the mandate immediately is granted.