**WHITE OAK COMMON SCHOOL DISTRICT, NO. 19, HARDIN COUNTY, Texas, et al., Contestants,**

**v.**

**Dwayne V. OVERSTREET, County Attorney of Hardin County, Texas, Contestee.**

**No. 6809.**

Court of Civil Appeals of Texas.

Beaumont.

Nov. 24, 1965.

Rehearing Denied Dec. 15, 1965.

H. A. Coe, Jr., Kountze, Edward W. Jones, Jr., Livingston, for appellants.

Dwayne Overstreet, Kountze, Robert Q. Keith, Keith, Mehaffy & Weber, Beaumont, for appellee.

STEPHENSON, Justice.

This is an election contest. The election involved the consolidation of the West Hardin County Consolidated Independent School District with the White Oak Common School District No. 19, both of Hardin County. The declared result in the West Hardin box was 48 votes for consolidation and 3 votes against. The declared result in the White Oak box was 63 votes for consolidation and 60 votes against. Trial was before the court challenging the White Oak box only, and judgment was rendered upholding the validity of the election and the consolidation. Contestants are taxpayers residing in the White Oak District and Contestee is the County Attorney of Hardin County, Texas. The parties will be referred to as contestants and contestee, as they were in the trial court.

Contestants and Contestee each challenged certain specific votes which had been cast. The votes of Mr. and Mrs. J. M. Myers were challenged by both sides and a stipulation was made that these votes were invalid and that their votes should be subtracted from the total votes for which they were counted. The trial court proceeded to hear evidence on the part of Contestants as to the remaining votes challenged by them. Each vote was considered separately and the trial court ruled that all of these votes were valid. Evidence was then heard as to the votes challenged by Contestee and the trial court ruled that seven of such votes were invalid. The record then shows the trial court requested the bailiff to ask the County Clerk to bring the ballot box and stub box to the courtroom. The record then contains a statement by the trial court that the stub box was presented in court and a suggestion that one of the parties to this suit ask the County Clerk to take the oath and put into the record his version of what happened to the ballots. At this point attorney for Contestee dictated into the record an instrument designated "Contestee's Motion for Nonsuit". In substance, it was stated that Contestee non-suited and dismissed his challenges as to the seven votes held by the court to be invalid as well as to the votes of Mr. and Mrs. Myers. It was further stated that it was stipulated that Mr. and Mrs. Myers each cast a ballot for consolidation and asked the court to declare the result of the election to be 61 votes for consolidation and 60 votes against consolidation. Contestants opposed this action and were permitted to call the County Clerk to the stand. His testimony showed that he had been ordered by the trial court at an earlier hearing to preserve such ballots but that apparently the ballot box had been opened by someone else and that the box was now empty and the ballots were gone. The County Clerk assumed the ballot box had been emptied by someone else while preparing for a later election. That this was done inadvertently with no fraud or illegal conduct involved. The court then granted contestee's motion for a non-suit as to the seven votes challenged by him and deducted two votes from the total cast for consolidation and declared the result of the election to be 61 for consolidation and 60 against.

Contestants first complained of the action of the trial court in permitting contestee to take a non-suit as to the seven votes declared invalid. It is argued that under Rule 164, Texas Rules of Civil Procedure, a non-suit may be taken at any time before a decision is made, and that the trial court had already made a decision as to such votes before the motion for non-suit was filed. It is pointed out that such rule does not say "before judgment is rendered," but only "before a decision is made." No authorities are cited to this court by the contestants directly in point.

In Corder v. Corder, Tex.Civ. App., 189 S.W.2d 100, wr. ref., it is stated:

> "In our opinion, the words used in the rule 'before the decision is announced' mean before judgment is rendered."

We agree with this interpretation of the rule. Many decisions are made by a court during the course of a trial, before a judg-

ment is finally determined. No judgment had been entered by the trial court before contestee filed his motion for non-suit, and in fact, the trial court could have changed its decision as to the validity of any of the votes passed upon before entering a judgment. Further, the taking of the non-suit by contestee could not have in any manner prejudiced the right of contestants to be heard on their claim for relief. The trial court properly granted such motion. The contest of these seven votes was put in issue solely because of the pleadings and evidence offered by contestee. If this motion by contestee be construed to be in effect a trial amendment, the trial court could within its discretion permit contestee to amend his pleadings under Rule 165, T.R. C.P. The point is overruled.

The other points raised by contestants as to the court not being able to arrive at the true result of the election because of the destruction of the ballot and the refusal of the trial court to permit contestants to issue subpoenas for the persons casting the nine votes declared to be invalid in order to ascertain how they voted both are dependent upon the validity of the order of the trial court permitting contestee to take such non-suit. Such action being proper, these points are overruled. It is immaterial whether contestee could stipulate that Mr. and Mrs. Myers' votes were cast for consolidation, as such two votes could not have changed the outcome of the election.

The only point which remains to be passed upon is validity of the vote cast by Mrs. Sarah A. Perkins. This point involves the construction of Article 5.05, Subdivision 15 of the Election Code, V.A.T.S., which now reads in part as follows:

"No assistance shall be given a voter in marking his absentee ballot except where the voter is unable to prepare the same himself because of some bodily infirmity, such as renders him physically *unable to write or to see.*"

The evidence shows Mrs. Sarah Perkins was about 78 years of age and had suffered a stroke about three years ago. She was driven to the polls in order to cast an absentee ballot by her daughter-in-law, Mrs. Faye Perkins. The evidence further shows Mrs. Sarah Perkins discovered after arriving at the polls that she did not have her reading glasses and she could not see well enough to cast her ballot without assistance. Mrs. Faye Perkins took the oath required by law and assisted Mrs. Sarah Perkins in casting her ballot. Contestants contend she was not entitled to be assisted, citing Hillert v. Schweppe, Tex.Civ.App., 234 S.W. 152, as authority supporting their position. This case, which has no writ history, was decided at the time Article 3003, Rev. St., was in effect. The pertinent portion of such statute reads as follows:

"* * * nor shall any assistance be given a voter in preparing his ballot, except when a voter is unable to prepare the same himself because of some bodily infirmity, such as renders him physically *unable to read and write, * * *.*" (emphasis added)

We interpret the portion of Article 5.05, Subdivision 15 of the Election Code, quoted above, to mean that a voter is entitled to assistance if the voter has a bodily infirmity which renders him physically unable to see well enough to cast a ballot without assistance, at the time such voter goes to the polls. According to the evidence, Mrs. Sarah Perkins was entitled to the assistance she received. The point is overruled.

Judgment affirmed.