Reginald ATKINSON, Appellant,

v.

Sam THOMAS, Appellee.

No. 11468.

Court of Civil Appeals of Texas.

Austin.

Oct. 14, 1966.

Grindstaff & Grindstaff, Everett J. Grindstaff, Ballinger, for appellant.

Wilson, Logan, Lear & Massey, Ralph Logan, San Angelo, for appellee.

HUGHES, Justice.

This is a statutory election contest, appellant Reginald Atkinson being the contestant and appellee Sam Thomas being the contestee. Both parties were candidates at the Democratic Primary Election held in Irion County on the 7th of May 1966 for the office of County Judge. The official result of the election was 285 to 284 in favor of appellee. The result of this contest in the court below was 283 to 277 in favor of appellee.

Appellant has challenged the validity of twenty one votes on the ground that the persons casting such votes had not resided in Irion County for the last six months prior to the election. Art. 5.02 Election Code, Vol. 9, Vernon's Ann.Tex.Civ.St. The first seven of these challenged votes were cast by single persons and they will be first discussed. The relevant facts regarding these voters will now be stated:

### Maxine Van Court

Miss Van Court is a school teacher. She teaches outside of Irion County. She registers her automobile and has paid her poll tax in Irion County. Her father and mother live in Irion County and Miss Van Court spends her holidays and summers with them. Miss Van Court was reared in Irion County.

### R. B. Mitchell

Mr. Mitchell was reared in Irion County from the time he was a small child. He owns property in Irion County, does his banking there and has voted there since 1920, and has never voted elsewhere. He considers Irion County his home.

Mr. Mitchell testified, in part, as follows:

"Q And where do you presently live, please sir?

A My home is in Irion County.

Q All right. And where do you live?

A I stay at present with my sister in San Angelo.

Q And at what address?

A 121 North Poe.

Q How long have you stayed with your sister at that address?

A Well, I'd say off and on for about four or five years.

Q And where did you stay previous to the time that you stayed there with your sister?

A Most of the time here in Irion County.

Q Do you own the home there at North Poe?

A No, sir.

Q And are you married, Mr. Mitchell?

A No, sir.

Q And at any time during the past four or five years have you stayed at any other place other than there in San Angelo with your sister?

A No, I haven't; other than there and here in Irion County.

Q Do you have a home or anything here in Irion County?

A I own property here, yes sir.

Q Do you have a house that you actually stay in at night?

A There's a place—there's several places here that I spend the night any time I am here.

Q But you don't actually have a house?

A I don't own a house. I own other property.

Q Well, is it rented out?

A No, sir.

Q And during the last year have you spent the majority of the nights in San Angelo at your sister's?

A I have spent the majority of the nights in San Angelo, yes sir.

Q And it is just occasionally that you come over here?

A I won't say occasionally; I am over here quite often.

Q How often would you say?

A I'd say an average of about twice or three times a week.

Q And is it for several hours a day when you come over here?

A Well, sometimes I spend the night here, maybe two or three nights; other times I'm just here for a few hours and go back.

Q Do you stay with some friends when you might spend overnight?

A Yes.

* * * * * *

Q How long has it been since you had some livestock out here?

A I think about three years.

Q Why are you living in there with your sister at the present time?

A My sister, she is not exactly an invalid, but she needs someone to be with her, and I am in the same shape.

Q I believe you are a disabled veteran?

A That's right.

Q World War II?

A That's right."

Mr. Mitchell paid his poll tax for previous years in Irion County and did his banking business there. He thought Irion County should be his home.

### Arthur McInteer

Mr. McInteer is unmarried. He has voted in Irion County for the past 33 years, owns property there, considers Sherwood, in Irion County, his home and plans to live in Irion County when he retires. Mr. McInteer testified, in part, as follows:

"Q And where do you live?

A Well, I live at the ranch at Big Lake, about a couple of miles the other side of the county line.

Q And is that in Reagan County?

A Yes, sir.

Q And do you work there on this ranch?

A Yes, sir.

Q Whose ranch is it?

A. Mrs. Vester Hughes.

Q And how long have you worked on this particular ranch?

A Oh, about 29 years.

Q Been there quite a while, haven't you?

A Two or three days anyway.

Q And have you lived on this same ranch during that 29 years?

A Yes.

* * * * * *

Q And have you ever served on juries in this county?

A No, they called me one time, but told me I was a single man and didn't want me on the jury.

Q Have you served on Grand Juries here?

A No."

Vester T. Hughes, Jr.

Mr. Hughes testified, in part, as follows:

"Q Where do you live, Mr. Hughes?

A My home and permanent residence is Mertzon; my business address, 4300 First National Bank Building, Dallas.

Q All right. And you are a lawyer?

A That's right.

\* \* \* \* \* \*

Q How long have you been practicing in Dallas, Vester?

A 1955; 11 years, July.

Q And are you practicing by yourself or are you with some firm?

A I am a partner in the law firm of Jackson, Walker, Winstead, Cantrell & Miller.

Q And how long have you been a partner in this firm?

A 1958, October.

Q And did you practice with this firm between 1955 and '58?

A I did.

Q And where do you live in Dallas?

A My apartment presently is 4717 Bowser, Apartment No. 22.

Q And how long have you been living in this apartment?

A I think approximately eight years. I am getting ready to move.

Q Are you married?

A I am not.

Q You said that you claim Mertzon as your permanent home. How many times do you come here each year?

A That will depend on the year. Sometimes several; sometimes comparatively few.

Q Your mother lives here, does she not?

A Yes, sir.

Q Is most of the time to visit with her on holidays or special occasions?

A That's right. I have an interest other than that in the home. I am a remainderman in the will.

Q And is that in ranch property also?

A Not in Irion County.

Q Reagan County?

A Reagan County.

Q Well, since June 1st of 1965 approximately how many times would you say that you have been back to Mertzon?

A Six or less; I really don't know. Some for several days' duration and some for a day or so.

Q What would be the longest period of time possibly that you have come back within the last year?

A A week or less."

Mr. Hughes went through junior year in high school in Mertzon and finished high school, college and law school elsewhere, coming to Mertzon in all summer months. After returning from the Army, Mr. Hughes practiced law in Mertzon for a short time. He was registered with the Irion County Draft Board and was called to service by it. He registers his automobile in Irion County, files his income tax from there, receives mail there and was twice a delegate from Irion County to the State Democratic Convention and was an alternate delegate in 1956.

Mr. Hughes has no present intention of terminating his law practice in Dallas.

Mr. Hughes has some personal belongings in Mertzon and he considers Mertzon his home and legal residence.

### Joe Robert Thorp

Mr. Thorp is single, is a heavy machine operator, moves about in his work, but he considers his parents' home in Mertzon to be his home.

Mr. Thorp testified, in part, as follows:

"Q And where do you presently live?

A I live in Albuquerque.

Q In Albuquerque, New Mexico?

A Yes.

\* \* \* \* \* \*

Q And how long have you lived in Albuquerque?

A Since about the 1st of February.

Q About February?

A Yes.

Q And where did you live prior to February?

A I was here in Mertzon.

Q And what were you doing in Mertzon?

A I was taking it easy, resting, loafing.

Q How long were you here?

A During the month of January.

Q During the month of January. Approximately how long during January?

A Nearly all month, lacked a few days of being a month.

Q And where were you staying?

A I was staying with my mother and father.

\* \* \* \* \* \*

A I was at Eldorado the first of the year.

Q First of '65?

A Right, because this will be easier. Went to Midland, worked for the Ruby Construction Company; went to Sanderson when they had that washcut and stayed down there about two weeks. I left Sanderson and went to Fort Worth; they sent me back to Alpine, stayed there two months and I lived in the hotel; and went back to Midland; from Midland I went back to Dallas, stayed there two weeks; back to Fort Worth two weeks.

Q So we can say during the year 1965 you were at several different places with your work?

A Yes, and whenever I was that distance I would always come back to Mertzon.

Q Came back to visit the folks?

A That's right, and spend time.

Q Have you ever had a home or a house here in Irion County after you have been grown, other than living with your folks?

A No.

\* \* \* \* \* \*

Q When you moved around these different places like you did in 1965, and also, say, like in Albuquerque, where did you usually stay?

A I rented a bedroom in a private home. Whenever I was in Sanderson, Forth Worth, Dallas, they paid my expenses, and I stayed in motels and hotels, and they even bought my cigarettes.

\* \* \* \* \* \*

Q And at least for the year 1965 and up until May 7, 1966, taking into consideration all of the different places your employers have moved you around to, you haven't had an opportunity to acquire a legal residence

anywhere except right here in Irion County, have you?

A That's right.

Q And were you born here?

A Yes, sir."

Mr. Thorp has paid his poll tax rather regularly in Irion County. He gets mail in Irion County and has a bedroom and clothes in his parents' home. He owns no real estate in Irion County.

### Drew McInteer

Mr. McInteer is single, a man 68 years of age, who has called Sherwood his home all of his life. He has a homestead and personal belongings in Irion County, stays part time there, and has voted in Irion County since becoming of age.

Mr. McInteer had worked on the Vester Hughes Ranch in Reagan County until injured about a year ago after which time he went to his sister's place in Tom Green County where he stayed until September 1, 1965; then he went, on doctor's orders not to work, to South Texas where he stayed 4½ months. He then returned to his sister's in Tom Green County until March 1, 1965, when he returned to Irion County.

### Mrs. Sammy Sugg

Mrs. Sugg did not testify, nor did any personal acquaintance of hers testify regarding her residence. Mr. Alvie Baxter, Sheriff of Irion County, testified that he had been Sheriff since 1960 and that he knew Mrs. Sugg by sight and last saw her about one year ago in Mertzon. We quote from the testimony of the Sheriff:

"Q Do you know where she lives?

A No, I don't for sure.

Q Do you know if she lives in Irion County?

A Not that I know of.

Q To the best of your knowledge do you think she lives outside of Irion County?

A To the best of my knowledge, all I know is her lawyers buy her license plates for her car and they have me to send them to her address in California.

Q And how long have you been doing that?

A Well, ever since—I guess ever since I have been in office here."

The Sheriff also testified that Mrs. Sugg had paid her poll tax in Irion County since 1960 and that she owned a home in the County. Her poll and property taxes were attended to by her attorneys.

Art. 5.08, Election Code, Vol. 9, V.T.C.S., provides, in part, that the "residence" of "a single man is where he usually sleeps at night."

It is our opinion that it is conclusively shown that neither Mr. R. B. Mitchell, Mr. Arthur McInteer, Mr. Vester T. Hughes, Jr., Mr. Joe Robert Thorp nor Mr. Drew McInteer were qualified to vote in the May 7, 1966 primary for the reason that none of these men for a period of six months prior to such election usually slept at night in Irion County. See Cramer v. Graham, 264 S.W.2d 135, San Antonio C.C.A., writ ref., where the Court, Justice Pope writing, stated: "'Usually' means customary or habitual, and, as applied to a place of abode, has been defined as 'customary or settled place of residence; a regular, fixed and permanent residence, as distinguished from a temporary stopping or abiding place.' Ballentine's Law Dictionary, p. 1323."

Appellee relies upon Mills v. Bartlett, 377 S.W.2d 636, Tex.Sup., as sustaining the validity of these votes because of the intention of these voters to maintain a voting residence in Irion County coupled with their sporadic visits there.

We do not consider Bartlett to be controlling. That case involved a student exception from the rule that the residence of a single man is where he sleeps at night. No such exception is involved here.

■■ The vote of Mrs. Sammy Sugg is not shown to be invalid by evidence of a conclusive nature. We doubt the sufficiency of the evidence to raise the issue of its invalidity. In any event, we sustain the implied finding of the trial court that she was a legal voter.

We also sustain the action of the trial court in not invalidating the vote of Miss Maxine Van Court.

■ While no authorities on the point have been cited to or found by us, we are of the opinion that Art. 5.08, supra, applicable to a "single man" is not applicable to Miss Van Court.

In Glover v. Cobb, 123 S.W.2d 794, Dallas, C.C.A., writ ref., it was held that the word "men" in a statute did not include "women" under Sec. 3, Art. 10, V.T.C.S., providing that the masculine gender shall include the feminine.

Single women, as a rule have closer home ties than single men and this may have motivated the Legislature in not defining the residence of single women to be the same as the residence of single men.

■ We advert then to the general rule that a school teacher who returns home during vacations and holidays may retain her voting residence at home if she so intends. See an Annotation on this subject in 98 A.L.R.2d 488. We limit our holding on this point to the fact that the school teacher voter here is a female. It is, therefore, not in conflict with the holding in Linger v. Balfour, 149 S.W. 795, Amarillo C.C.A., n. w. h.

The next eight votes which are challenged by appellant were cast by married persons. We will briefly state the evidence as to each voter.

### Hayden Ellis

Mr. Ellis owns a home in San Angelo where he has lived for about 3 years. His wife, daughter and stepson live with him. Mr. Ellis also owns a homestead in Mertzon consisting of 65 acres and a three bedroom house. He also leases ranch and farm land in Irion County, the farm having on it a furnished house where the family stays in the summer and when the children are not in school. Mr. Ellis stays at this place some during the school year. Mr. Ellis, excepting 4½ years, has lived in Irion County since he was twelve years of age and he does his banking and most of his business there, and receives mail there. Mr. Ellis sleeps the majority of nights in San Angelo. He stated that he moved to San Angelo to create a happier atmosphere for his family, following his divorce, and that the move was temporary and that he intended to return to Mertzon after the children finished school which would be nine or ten years.

### Mr. and Mrs. H. H. Linthicum

Mr. and Mrs. Linthicum own ranches in Irion and Schleicher Counties. They formerly lived just north of Barnhart in Irion County where they still have a ranch house suitable for living. They moved to San Angelo about four years ago in order to educate their three children, one of whom is not in school, the other two being in the fifth and seventh grades, respectively. The Linthicums own their own home in San Angelo and rendered it as their homestead. With respect to this home Mrs. Linthicum testified, "Well, that is my home for the present. In the future, I will probably move back to Barnhart, when my children finish their education." Mrs. Linthicum spends most of her time in San Angelo, but she visits the ranches on weekends and in the summer. The Linthicums register their car and have always voted in Irion County, bank there, and consider the ranch south of Barnhart as their permanent address and place of residence.

### Mrs. Gene Linthicum

Mrs. Gene Linthicum who formerly lived in Irion County has lived in a rented apartment in San Angelo with her husband and children since September, 1965. The youngest child is eight years of age. She has voted in Irion County since 1951, receives mail and owns ranch property in Irion County. She has continued to operate ranch properties in Irion County, going back and forth from San Angelo, staying at the ranch in summertime and maintaining her home in Irion County. She testified that after the children have finished their schooling, she intends to make her home in Barnhart, Irion County.

### Mrs. Len Mertz

Mrs. Mertz is the wife of Len Mertz. When asked where she lived she said, "Two places" one in Irion County and the other in San Angelo. The Mertzs' have owned the San Angelo home for forty years. Mrs. Mertz has because of her health spent most of the time for the past several years in San Angelo. She has voted in Irion County since 1940 "because our livelihood came from out there."

### Len Mertz

Mr. Mertz lives at the ranch in Irion County which his father owned when Mr. Len Mertz was born. He spends 97% of his time at the ranch driving to San Angelo two or three times a week for mail and supplies. He has voted in Irion County since 1940 and has never voted elsewhere. He banks in San Angelo.

### Mr. and Mrs. Joe Funk

Mr. Funk was deceased at the time of trial. Mrs. Funk testified that she and Mr. Funk had lived at the ranch in Irion County for 14 years and in San Angelo for 20 years. For the past several years the Funks stayed most of the time in San Angelo because of the illness of Mr. Funk and Mrs. Funk's mother. The Funks moved to San Angelo when their son started to school and later moved to the ranch and stayed there until the illnesses mentioned.

Mr. Funk served on petit and grand juries in Irion County for many years. The Funks have voted in Irion County for many years. Mr. Funk's will recited that he was a resident of Tom Green County, but it was probated in Irion County.

Art. 5.08, supra, provides in part that the residence of a married man is "where his wife resides." It has been held, however, that despite this statute the husband has the power to fix the domicile or residence of the family. Harwell v. Morris, 143 S.W.2d 809, Amarillo C.C.A., n. w. h., Farrell v. Jordan, 338 S.W.2d 269, Houston C.C.A., writ dism. The latter case also holds that the above statutory languages means that the residence of the husband is where the legal residence of the wife is, not where she may physically reside.

We agree with these constructions or modifications of that portion of Art. 5.08 now under discussion. We also note that Art. 5.08 was amended in 1963, subsequent to the decisions in the two cases cited above, using the same language construed in those cases. This tends to prove the correctness of such constructions.

This view of the law results in the clear validation of the votes of Mr. and Mrs. Len Mertz, as the trial court concluded.

We believe that the vote of Mr. Hayden Ellis is invalid since there is no evidence, other than his expressed intention to return to Irion County after his child finished school ten years hence, to sustain its validity. Intention alone is not sufficient. Mills v. Bartlett, supra. It is true that Mr. Ellis does many things in Irion County and transacts most of his business there. This, however, is not the test for fixing a voting residence. A person may transact business in many places

but he can vote in but one place and that is where he resides. There are exceptions to this rule but none is applicable to Mr. Ellis.

We hold as a matter of law that the intention of Mr. Ellis to return to Irion County after a lapse of ten years does not make his abode in San Angelo a temporary one.

In the same category fall the votes of Mr. and Mrs. H. H. Linthicum. They live in San Angelo from which place they operate ranches in Irion and Schleicher Counties. The record does not reflect any present intention on the part of Mr. and Mrs. Linthicum to move to Irion County within such time as to make their residence in San Angelo a temporary one.

For similar reasons, we hold the vote of Mrs. Gene Linthicum to be invalid. Her actual place of habitation is with her husband and children in San Angelo from which base she operates her ranch properties.

We have doubts regarding the votes of Mr. and Mrs. Joe Funk. We have concluded that there is more than a scintilla of evidence to sustain the validity of these votes and we sustain the trial court in upholding them. A move caused by illness is usually and hopefully temporary. We cannot hold as a matter of law that the move of the Funks to San Angelo was of a permanent nature, or so intended. This conclusion is corroborated by the probate of Mr. Funk's will in Irion County.

### Sam, Birdie and Nancy Langford

The next votes to be considered are those of Sam, Birdie and Nancy Langford. The attack on them is that the one year's residence in the State is not met. We overrule this challenge.

Sam Langford, his wife, Birdie Langford, and their unmarried daughter, Nancy, were former residents of Irion County where they owned a property interest in a cafe with Mr. Langford's parents. They had lived in Oklahoma for approximately two (2) years, but had made plans to return to Irion County at Christmas, 1964. They had sent some belongings back to Irion County with Mr. Langford's mother at that time. They were planning to take over the operation of the cafe when their lessee gave it up. This was due to be in June, 1965, but Mr. Langford's mother called them several months before then and confirmed that the lessee was giving up the cafe and wanted to know the disposition of the Langfords. They had told her at that time that they wanted the cafe. Sam Langford hauled a load of belongings to Mertzon in March, 1965 on his trailer and on the 21st day of April, 1965, he brought another load of furniture and belongings from Oklahoma to Irion County. He rented a trailer to bring that load to Texas, and the receipt for the rental of the trailer was introduced in evidence. Sam Langford quit his job about the 1st of April, 1965. Other belongings were also shipped during April, 1965. Their friends and fellow-workers in Oklahoma knew in April, 1965 that the Langfords were moving to Texas and actually Sam Langford was last in Oklahoma in April. He testified:

"Q Alright, and when did you last move to Mertzon?

A In—oh, it's a process of several loads, from the latter part of March, also in April, and then the remainder of the household goods was in—oh, I believe it was in June.

\* \* \* \* \* \*

Q But it was at Christmas that you definitely made the decision?

A Oh yes, that is when we told them that we would definitely take it back.

\* \* \* \* \* \*

Q And how did you leave it with your mother and father as to when you would come?

A I told them—the Sawyers had been real good friends of ours, well, for years, since we first came to Irion County in '46. I told them not to even suggest that we wanted them out, but when they decided to get out, well then we would take it back or take it over, so actually it was April or rather March is when Mrs. Sawyer told my mother that they were going to have it give it up; so I moved the first load, actually my first load of our belongings from Oklahoma City to Mertzon in March."

Mertzon has been the permanent address of Mr. and Mrs. Sam Langford and their daughter since 1946.

We believe these facts are sufficient to sustain the finding of the trial court establishing the legal residence of this family in Texas for more than one year preceding the election. Appellant cites the case of Farrell v. Jordan, 338 S.W.2d 269, Houston, writ dismissed, as opposing this conclusion. There the Court of Civil Appeals merely sustained a trial court finding that timely residence was not established. Our legal posture here is the same; but the result is just the opposite.

There are other facts, unnecessary to relate, upon which the trial court probably could have made a finding that one year's legal residence was not established. No point is made that any finding of the court was against the weight of the evidence; hence, we need consider only the evidence to sustain such finding.

### Mr. and Mrs. J. H. Bullard

 The Bullards did not testify. They list no property for taxation in Irion County. Mr. Tyson Gentry, Democratic Precinct Chairman, testified that the Bullards lived in Lubbock and had not lived in Irion County for several years. Sheriff Alvie Baxter testified that the Bullards had not lived in Irion County for the past eleven years. The only evidence of a contrary nature is that they pay their poll taxes in Irion County and claim such county as their residence. In our opinion, this is not sufficient evidence to raise an issue concerning their residence. We hold, as a matter of law, that the Bullards are shown not to be residents of Irion County. Their votes should not be counted.

### Mr. and Mrs. William Stokes Thorp

 Mr. and Mrs. Thorp have two children. They have lived in Santa Fe, New Mexico, from July 1965 to February 1966 and in Questa, Mexico, since February 1966. Their children attended school in both places.

Mr. Thorp is in the construction business which requires him to move about.

Prior to 1965, the Thorps lived in Mertzon for about one year in a trailer house which they sold after leaving. They rented a house in Santa Fe and have since started the purchase of a trailer house and are planning to locate it on property in Irion County which they are buying when they return, as planned, to Irion County in the Fall of 1966.

The Thorps have voted in Irion County for the past 14 years, give Mertzon as their permanent address and intend to return to Irion County each time they leave.

It is our opinion that the votes of Mr. and Mrs. Thorp should not be counted. They have no fixed place of abode in Irion County to which they may return after leaving. The only habitation to which they could have returned was the trailer which they sold. The move from Irion County was complete and once the trailer was sold, no visible evidence of their residence there remained. Their residence in Irion County depends solely on their intention which is not enough. It may be unfortunate that people may not select their voting residence regardless of where they

live, but the law does not permit this to be done.

### Simon Gonzales

Mr. Gonzales has worked on the Penrose Metcalfe ranch in Irion County for 46 years. About 9 years ago he moved to San Angelo after his wife became ill. She requires medical attention once or twice a month. Her daughter and daughter-in-law now help care for her. Mr. Gonzales intends to return to the ranch if his wife's health improves. Mr. Gonzales considers Irion County his place of residence and has voted there since 1926.

Doubtfully, we hold that this evidence is sufficient to sustain the trial court's finding that Mr. Gonzales was a resident of Irion County.

### W. L. Mann

Mr. Mann moved to Irion County in 1936, since which time he has voted there. Mr. Mann is now retired. Three years ago he moved to Stamford in order that his daughter may help care for his invalid wife. Mr. Mann owns a home in Irion County and intends to return to it when the condition of his wife will permit.

We sustain the trial court in finding Mr. Mann a resident of Irion County.

The absentee votes of Mr. and Mrs. William Stokes Thorp, Dale Tankersley, Mike Brauns and Vester T. Hughes, Jr., are challenged on the ground that they did not comply with the provisions of the Texas Election Code regulating the casting of absentee ballots.

Since we have held that Mr. and Mrs. Thorp and Vester T. Hughes, Jr. were not entitled to vote in the May Primary in Irion County because lacking in residence qualifications, we will not discuss the point here made as to their non-compliance with laws with respect to absentee voting.

The application of Mr. Dale Tankersley for an absentee ballot is copied in full:

"2621 Bachman Blvd.
Dallas, Texas 75220

April 18, 1966

Mrs. Kirby Lawdermilk
County Clerk, Irion County
Mertzon, Texas

Dear Kirby:

Please send me an absentee ballot to the above address for the Democratic primary. I want to vote absentee.

Please give my regards to everyone at the Courthouse.

Sincerely,

/s/ Dale
Dale

Encl: Poll Tax"

This application completely ignores all of the elaborate provisions made for absentee voting by the Legislature. Art. 5.05 Texas Election Code. In our opinion, it is void, and it did not authorize the County Clerk to send Mr. Tankersley a ballot and that such returned ballot is void and should not be counted.

If we were to countenance the total disregard of provisions of Art. 5.05 and allow this ballot to be counted, we would, in effect repeal such Article, and this we have no power to do.

We agree with the opinion of the Court in Farrell v. Jordan, 338 S.W.2d 269, Houston C.C.A., writ dismissed, that the Legislature has made the manner of casting absentee ballots mandatory and that if the statutory requirements were not complied with [1] the votes were void and should not be counted.

We will not copy the application of Mike Braun because it was on a printed form

---

1. We probably would have said "substantially complied with."

and the only complaints regarding it were that it was not dated and was mailed from Mertzon, Irion County.

 The envelope in which the application was mailed was postmarked at Mertzon, April 12, 1966. This was five days before absentee voting began. Under Sub. 1, (ii) mailing from within the county was permissible.

We believe the date on the envelope in which the application was mailed may be considered as a part of the application in order to supply its date.

The vote of Mr. Braun is upheld.

 Appellant has a point to the effect that the trial court erred in not counting the votes of Mr. and Mrs. Jackson Tankersley.

The Tankersleys live on a ranch. The ranch house is very near the Schleicher County line. They did not know in which county the house was located. They have voted for many years in Irion County.

The evidence is sufficient, in our opinion, to sustain the finding of the trial court that the Tankersleys did not reside in Schleicher County.

Mrs. Melvin Boyd, custodian of the records in the Agricultural Stabilization Office in Irion County, testified to the accuracy of certain aerial photographs or maps constituting part of the official records of her office and that they show the Tankersley house to be in Schleicher County. The objection to these photographs or maps was as follows:

"If it please the court, we still renew our objection to the inaccuracy of the map for the purpose of determining the location of the house, plus the fact that it is not shown by whom the county line was drawn on the index map, and that the county line does not show on Defendant's Number 10, and that there is no accurate way of measurement as to Defendant's Number 11 to determine where the house is located or to determine whether or not, secondly, it is in Irion or Schleicher County.

THE COURT: Overrule the objection."

 We consider this objection to go to the weight of the map as evidence, and not as to its admissibility.

Also, there is other evidence consisting of a map attached to the probated will of Fayette Tankersley, together with the testimony of appellant, which places the Tankersley house in Schleicher County. Appellant does not brief his objection that this map was hearsay, and we need not discuss it.

We sustain the trial court in not counting the votes of Mr. and Mrs. Jackson Tankersley.

 Appellant complains that the trial court did not throw out seven ballots which, in the process of looking for ballots held to be illegally cast, were discovered not to have signatures on the ballot stubs. The trial judge ordered these unsigned stubs put back in the stub box. No objection to this procedure was then made by either party to this suit. Appellant has waived any right he may have had regarding these ballots by not seeking appropriate relief in the trial court. He cannot complain here for the first time. Graham v. Villareal, 242 S.W.2d 258, San Antonio C.C.A., n. w. h.

The judgment of the trial court is reversed with instructions to ascertain for which party to this suit the votes challenged by appellant and herein held to be invalid were cast and to deduct such votes from the total vote shown for each party by the judgment of the trial court from which this appeal was taken, and to render judgment in accordance with such tabulation.

No motions for rehearing will be entertained.

Reversed and rendered with instructions.