David **FUENTES**, Appellant,

v.

Frances E. **HOWARD**, Appellee.

No. 5913.

Court of Civil Appeals of Texas.

El Paso.

Dec. 27, 1967.

Rehearing Denied Jan. 24, 1968.

Charles E. McDonald, Alpine, George W. Finger, El Paso, for appellant.

Shafer, Gilliland, Davis, Bunton & Mc-Collum and Lucius D. Bunton, Odessa, for appellee.

OPINION

PRESLAR, Justice.

This is an election contest for the office of County Commissioner, Precinct No. 4, Presidio County, Texas, arising out of the election held November 8, 1966. The election returns and poll and canvass for said office as made by the election and county officials show that David Fuentes received 60 votes and Frances E. Howard received 44 votes as a write-in candidate, and by canvass of the Commissioners' Court of Presidio County, Texas, David Fuentes was declared elected. In an election contest, for which this appeal is taken, the trial court decreed the final tally and poll of legal votes to be 58 votes for Frances E. Howard; 55 votes for David Fuentes; and that Frances E. Howard was duly elected. We reverse, and render judgment that David Fuentes is the duly elected County Commissioner for Precinct No. 4, Presidio County, Texas.

The votes of Ramon Muniz, Cruz T. Muniz, Edubyin Muniz, Ramon Muniz, Jr., Bertha Muniz, Feliciano Muniz, Ricardo Muniz, Jose E. Mendoza, Ramon Mendoza, and Flora Zertuche were counted for appellee, Frances E. Howard, and appellant contends such votes should not have been counted because each of the voters received aid in that the notary public who took their acknowledgments to their absentee ballots struck out the name of appellant on the ballots and wrote in the name of appellee. Except for the vote of Flora Zertuche, which will be discussed later, the validity of such votes depends on whether Article 5.05, subdivision 15, Vernon's Annotated Texas Election Code, is directory or mandatory.

Subdivision 15, Article 5.05, in the parts here pertinent, provides:

"No assistance shall be given a voter in marking his absentee ballot except

where the voter is unable to prepare the same himself because of some bodily infirmity, such as renders him physically unable to write or to see. * * * Where any assistance is rendered in marking an absentee ballot other than as allowed in this subdivision, the ballot shall not be counted but shall be void for all purposes."

In its judgment the trial court found that such votes were legal votes, but expressly found "that each of said voters received assistance in voting their absentee ballots." Excepting Flora Zertuche, there is no contention that any of such voters suffered any bodily infirmity, and there is no dispute as to the court's finding that each received assistance in preparing his ballot. We are of the opinion that the article is mandatory and that these nine ballots should not have been counted for appellee. In providing this manner of casting absentee ballots, the legislature used mandatory language—"the ballot shall not be counted but shall be void" —and the courts have held that the provisions as to absentee balloting prescribed by the legislature, as amended in 1959, are mandatory and not directory. Farrell v. Jordan, 338 S.W.2d 269 (Tex.Civ.App., Houston 1960; wr. dism.); Brandon v. Quisenberry, 361 S.W.2d 616 (Tex.Civ. App., Amarillo 1962; n. w. h.); McGee v. Grissom, 360 S.W.2d 893 (Tex.Civ.App., Ft. Worth 1962; n. w. h.); Guerra v. Ramirez, 351 S.W.2d 272 (Tex.Civ.App., San Antonio 1961; wr. dism.); Atkinson v. Thomas, 407 S.W.2d 243 (Tex.Civ.App., Austin 1966; n. w. h.). Appellee cites cases holding that the election laws should be given a liberal construction to the end that they be held directory and not mandatory and the voting privilege not be lost by technicalities. With that there can be no quarrel, but the function of the courts is to interpret and apply the law as written by the legislature, and this provision of the law leaves no room for interpretation. We are unable to construe words such as "shall not" be counted, and "shall be void" as directory. The reported cases show that many of the abuses and misuse of the election process occur in the system of absentee voting, where the vote is cast somewhat in secrecy away from the public polling place on election day. The legislature has spelled out the manner in which this privilege of voting by mail and at a time and place other than the public polling place on election day shall be exercised. The general rule is that the performance of duties placed upon the election officials is directory unless made mandatory by statute, while those placed upon the voters are mandatory. Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817 (dism.); City of Roma v. Gonzalez, Tex.Civ.App., 397 S.W.2d 943 (ref., n. r. e.). By the above subdivision 15 the legislature has prescribed that the absentee voter who receives aid, however innocently, shall not have his ballot counted. Thus the task of proving fraud in the far-flung absentee voting is not cast upon one who contests absentee votes in which the voter received unauthorized assistance. The obligation of the contestant is to establish such assistance, and as to the votes before us the trial court found there was in fact assistance, and such finding is not challenged. Appellee cites Fields v. Cotten, Tex.Civ.App., 383 S.W.2d 84 (n. w. h.) and Mitchell v. Jones, Tex.Civ. App., 361 S.W.2d 224 (n. w. h.), for the proposition that subdivision 15 of Article 5.05 is directory and not mandatory. We cannot agree that such is the specific holding in either case, and we would adhere to the more definite holdings, with writ dismissed, of the cases of Farrell v. Jordan (supra) and Guerra v. Ramirez (supra), and the latest case specifically stating that the subdivision is mandatory, Atkinson v. Thomas (supra, no writ). Mitchell v. Jones recognizes the mandatory feature of the subdivision, for the opinion states:

"The first point challenges the respective ballots of a group of voters who received assistance in marking their ballots on the basis that the person giving assistance was not sworn, and did not take an oath in accordance with that part of Art. 8.13 pertaining to persons render-

ing assistance to voters in the preparation of their ballot. Art. 5.05, Sec. 15 and Art. 8.13 contain provisions identical in meaning, stating that when assistance is rendered the voter in preparing a ballot other than the assistance allowed by statute the ballot shall be void. It must be assumed that the legislature intended what the statute said; that is, that the vote cast shall be void if the voter receives assistance in preparing a ballot other than the assistance allowed by law. The facts show that no voter received assistance except in marking a ballot; such assistance is the very thing the statute authorized. Taking an oath regarding his duties by the person rendering assistance is no part of the act of assisting the voter. *Receiving assistance not authorized,* not being assisted by an unsworn person, is the prohibited act voiding the ballot."

In the course of the opinion the court then goes on to state:

"Art. 8.13 provides that no voter shall have assistance in preparing his ballot unless he can not do so because of some bodily infirmity that renders him physically unable to write or sightless. In Art. 5.05 Sec. 15 it is provided that assistance authorized by Art. 8.13 may be rendered absentee voters insofar as Art. 8.13 is applicable, the latter article stating specifically: 'The witness assisting the voter may perform any or all of the physical acts necessary to comply with the procedure for absentee voting.' It is probable that the restriction in Art. 8.13 of the assistance to the physically impaired and blind, if mandatory, would in a proper case be held unconstitutional as depriving persons unable to read and write of their franchise. The constitution does not make literacy a qualification to vote. However, when assistance is rendered, as is the case here, the quoted sentence from Art. 5.05 Sec. 15 pertaining to assistance to absentee voters should be interpreted as allowing assistance to a qualified voter in the performance of

any or all of the physical acts necessary to comply with the absentee voting regulations. Such assistance includes marking the voter's ballot. As noted the proof made was that the voter did not suffer from certain specified physical impairments, such as blindness, loss of hands, etc., *and no conclusive proof was made of the absence of other disabling physical condition.*" (Last emphasis ours).

Thus, the language of the court as to subdivison 15 loses some of its validity as the true basis for its holding, for it concludes that no conclusive proof was made as to the absence of other disabling physical conditions.

■ Fields v. Cotten was not decided on the basis that the language of subdivision 15 was not mandatory (in passing on the same language of Art. 8.13), but that it was not proved that unauthorized assistance was received. The court then went on to state: " * * * the *other* provisions of the Election Code covering this situation are directory. Mitchell v. Jones, Tex.Civ.App., 361 S.W.2d 224." (Emphasis ours). In the case before us, the court found as a fact that the voters received assistance, and such finding is supported by the evidence and is not challenged. We hold that the portion of subdivision 15 in question is mandatory and that the nine votes in question should not have been counted for appellee.

■ The situation of Flora Zertuche is that she suffered a bodily infirmity in that she could not read without glasses, and when she appeared at the voting place it was discovered that she had failed to bring her glasses. Under the authority of White Oak Common School Dist. No. 19 v. Overstreet, Tex.Civ.App., 397 S.W.2d 334 (dism), a case of almost identical facts, we hold that her vote was properly counted for appellee.

■ Appellee seeks to raise the issue of the constitutionality of that section of subdivision 15 of Article 5.05 which pre-

scribes the method of voting by illiterates and provides that no voter shall be entitled to any assistance in the marking of his ballot on the ground of illiteracy. A careful review of the entire record in this cause leads us to the conclusion that legality of these ten votes was not determined by the trial court on an issue of literacy. We do not question appellee's right to raise for the first time on appeal the constitutionality of a statute, but we do not believe that this record warrants a presumption that illiteracy was a basis for the judgment. Findings of fact and conclusions of law were not requested, and in the absence of such findings, but with a statement of facts filed, the elementary rule is that the appellate court must presume that the trial court resolved every disputed fact issue in favor of the winning party, and must consider only the evidence which supports its judgment. North East Texas Motor Lines v. Dickson, 219 S.W.2d 795 (S.Ct.1949). In the case before us, there were no pleadings of illiteracy and it does not appear that the issue was tried by consent. There is a basis for support of the court's judgment, based on the pleadings, so that it is not essential to the judgment that the illiteracy issue be presumed. Appellant, not appellee, challenged these votes, and pleaded assistance, which made the above-discussed issue of whether or not the subdivision in question was mandatory or directory. The form of the court's judgment belies the contention that illiteracy was an issue, for the court sets out each group of voters in paragraphs of the category in which challenged, and made its ruling as to such group; and, in some instances, as here, stated the court's finding. Thus the court, in its judgment, sets forth eleven enumerated paragraphs of conclusions and findings which follow the pleadings, and then states:

"The above findings are made, based upon the pleadings, amendments, supplemental and trial amendments filed herein and considered by the Court; as well as the evidence offered by the parties hereto, and the Court finds that Frances

E. Howard was duly elected to such office."

We are unable to conclude that literacy was a disputed fact issue which was tried by consent and passed on by the trial court as a basis for the judgment. The voters in question were Spanish-speaking individuals, and questions were asked as to their understanding of the English language, but that is a different matter from illiteracy, and provisions of the Election Code provide for interpreters; also, they were quizzed as to why the notary wrote in the name of appellee for them on their ballots, but the questions asked, together with the carefully drawn pleadings and the judgment with its findings, do not add up to a disputed issue tried by consent which this court is obligated to add to the other basis for the judgment. Subtract nine votes from the total of appellee.

█ █ The ballot of Petra Perez was cast absentee and was counted by the election officials and the trial court for appellee Howard. Appellant contests such ballot because the jurat is defective in that there is no seal or other designation identifying the officer administering the oath, and because it appears that such officer was an officer of the county of residence of the voter, Presidio County. The jurat begins "State of Texas, County of Reeves", but two lines are drawn through "Reeves" and "Presidio" is written in beside it. The person who administered the oath is one Venita F. Jobe, not otherwise identified, except that Venita F. Jobe signed over the printed designation, "Notary Public, Absentee Election Official, or other person authorized to administer oaths". In the absence of evidence to the contrary, Venita F. Jobe would be presumed to be what the jurat says he is— one authorized to administer oaths. The carrier envelope is very clearly postmarked from a point outside of Presidio County, and the presumption in support of the trial court's counting of the ballot would be that Venita F. Jobe was not an officer of Presidio County. We are of the opinion that

all that was done amounted to substantial compliance with the election laws, and that the record does not warrant reversal of the trial court's action as to the vote of Petra Perez.

■ ■ By Points of Error numbered 5, 6, 7 and 8, appellant contests four votes counted for appellee on the basis that each of such ballots is illegible and the intention of the voter to cast a ballot for Frances E. Howard is not clearly ascertainable within the meaning of Art. 6.06 of the Texas Election Code. These ballots were apparently legible to the trial court, and we can read them, so the evidence supports the court's counting of these votes. One of these ballots is also contested because the name written in is "Nell Howard". There is evidence in the record that appellee is known in the community as Nell Howard, Nellie Howard, and Frances E. Howard. Art. 6.06 of the election code provides that the failure of the voter to mark his ballot in strict conformity with the directions of the code shall not invalidate the ballot, and that the ballot shall be counted where the intention of the voter is clearly ascertainable. The intention of the voter was clearly ascertainable in this small community, population-wise, where the two principals had engaged in a prior closely contested race for the same office in the primary election. In conformity with the holdings in the cases of Longoria v. Longoria, Tex.Civ.App., 278 S.W.2d 885 (n. w. h.), and Johnston v. Peters, Tex.Civ. App., 260 S.W. 911 (dism.), we hold that the trial court properly counted this ballot for appellee Howard.

■ By cross-assignments of error, appellee says that the court should have counted the vote of Manuel Tarrango, Sr., as he is the only absentee voter whose initials are "M.T.". The judgment recites: "The Court finds that one voter failed to place his name on the stub of his ballot, and that he placed his initials thereon, and that such vote was counted for Contestant, and that his failure to sign his name to the stub voids his vote and, for that reason, such vote should be deducted * * *" The court correctly held that the vote should not be counted for failure of the voter to affix his signature to the stub. Vicars v. Stokely, 157 Tex. 182, 300 S.W.2d 623 (1957). Appellee makes the point that Manuel Tarrango could not write. The election code provides that in such a case the voter shall affix his mark, attested by two witnesses. That was not done in this instance, and the court properly voided the ballot.

■ Appellee challenges the vote of Luis Sanchez on the basis of citizenship. The voter testified in his own behalf that he was born at Ruidosa, Texas, and that he had been residing in Mexico but had returned to Ruidosa some two years before with a wife and children acquired in Mexico. The records from the local Selective Service Board listed him as "Alien living in Mexico", with a place of residence of Barrancas, Chihuahua, Mexico, and a mailing address of Ruidosa, Texas. The clerk of the local Selective Service Board testified that this information was furnished by the registrant's selective service questionnaire and the notation was made in 1949; and that in 1964 the registration of Luis Sanchez, alias Luis Prieto, was canceled and his Selective Service file destroyed, and he was no longer considered a registrant of Selective Service because he was an alien residing in Mexico. The plain implication is that Luis Sanchez is a draft-dodger. At the time of the Korean conflict he furnished his draft board the above information and absented himself from this country until some two years ago. Clearly he was not eligible to vote following his disclaimer of citizenship, and we see nothing in the record that outweighs such disclaimer. All that he has done is return. He has not again registered for the draft. The weight of the evidence is that Luis Sanchez is not a citizen of this country and is not entitled to vote. Subtract one vote from appellant's total.

Appellee challenges the votes of Mr. and Mrs. Norris, Mr. and Mrs. Middleton, James Arnold, Angel Salgado and Cesario Salgado, for the reason that they were not residents of Presidio County. The trial court found all of these votes to be legal votes and counted them for appellant. Appellee's broad assignments of error as to these votes do not specify whether she is saying there is no evidence to support the finding, or whether she is saying there is insufficient evidence to support such finding—or stated otherwise, that the finding is against the great weight and preponderance of the evidence. The rules for determining the two assignments are different. If the complaint is that there is "no evidence", the reviewing court considers only the evidence and the inferences tending to support the findings, and disregards all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965); Commercial Standard Insurance Company v. Allred, 413 S.W.2d 910 (Tex.1967). From the manner of briefing and the relief prayed for—rendition rather than remand—we conclude that appellee is asserting that there is no evidence to support the court's action as to these votes. The basis for the court's conclusion that the votes are valid not being specified, we must presume that the trial court resolved every disputed fact issue favorably to its conclusion. We conclude that the action of the trial court in counting these votes for appellant must be sustained.

We have determined that nine votes should be subtracted from the total of 58 counted by the trial court for appellee Howard, and that one vote should be subtracted from the total so counted for appellant Fuentes. This makes the final tally and poll of legal votes 54 for appellant and 49 for appellee.

The judgment of the trial court is reversed, and judgment is here rendered that David Fuentes is the duly elected County Commissioner for Precinct No. 4, Presidio County, Texas.